STATE of Minnesota, Respondent,

v.

Stephen T. ABE, Appellant.

No. 49691.

Supreme Court of Minnesota.

Jan. 25, 1980.

Richard A. Newgren, Bloomington, for appellant.

Katz, Lange & Davis, Gary L. Manka, Asst. City Atty. and Robert J. Hajek, Minneapolis, for respondent.

Heard before PETERSON, KELLY, and TODD, JJ., and considered and decided by the court en banc.

TODD, Justice.

Stephen T. Abe was arrested upon suspicion of driving while intoxicated. He was given an implied consent warning.[1] He contacted his brother who is a lawyer. He then submitted to a blood test. The results of the test were suppressed by the county court for failure to give a 90-day warning in addition to the 6-month implied consent warning. The district court panel reversed the trial court, and Abe was granted permission to appeal. We affirm.

The facts have been stipulated to by the parties. The stipulation provides in part:

On January 12, 1978, Defendant Stephen T. Abe was stopped by a police officer at Minnetonka Boulevard and Raleigh Avenue in Saint Louis Park, Hennepin County, Minnesota. For the purposes of this Stipulation of Facts, it is agreed by and between the parties that the police officer had reasonable and probable cause to stop Mr. Abe's vehicle. Upon observing Mr. Abe and talking with him, it was the opinion of the police officer that Mr. Abe had been driving while under the influence of an alcoholic beverage. For the purposes of this Stipulation of Facts, it is agreed by and between the parties that the police officer had reasonable and probable cause to believe that the Defendant was under the influence of an alcoholic beverage.

At that time the Defendant was placed under arrest and for the purposes of this Stipulation of Facts, it is agreed that the Defendant was read the entire contents of "The Implied Consent Advisory," a copy of which is marked as Exhibit A incorporated herein by reference. At that time the Defendant stated that his brother was an attorney and that he would take whatever tests his brother recommended via a telephone call. The Defendant was then transported to the City Jail where he was allowed a phone call to his brother. His brother, Theodore K. Abe, is an attorney in Minneapolis who advised the Defendant to take a blood test. The Defendant then decided to take a blood test with the result being .18 alcohol content by weight.

It is agreed by and between the parties for the purposes of this Stipulation of Facts that the Defendant was not advised by the police officer that if he took a chemical test resulting in a reading of .10 percent or more alcohol by weight, that the State Department of Public Safety may suspend the Defendant's driving privileges for a period up to ninety days in a separate civil proceeding. It is further agreed by and between the parties hereto that Theodore Abe did not advise the Defendant that he may lose his license for up to ninety days under the Implied Consent Law and that the Defendant was not aware of the possible suspension of license under M.S. 169.127.

The Defendant was criminally charged with violations of M.S. Section 169.121, Subdivision 1(a) and (d) to-wit: driving

---

1. The implied consent advisory contains a statement that if defendant refuses to submit to testing, his driving privileges may be revoked or denied for a period of 6 months.

while under the influence of an alcoholic beverage and driving with a blood alcohol content of .10 percent or more by weight.

The county court suppressed the results of the blood test on the ground that it was misleading to advise defendant of the 6-month revocation he faced for failure to submit to testing without contemporaneously advising him that the test results could be used to permit a 90-day revocation of his driving privileges. The state appealed to a 3-judge district court panel which reversed the trial court's order of suppression. Their decision was based on a prior decision of another panel in their district which held that there was no requirement that a 90-day warning be given.

The issues presented are:

(1) Whether Minn.Stat. § 169.127 (1976) required a police officer to advise a driver that if the driver submitted to a blood test and the results of the test indicated a blood alcohol concentration above .10 percent, the driver's license could be revoked for 90 days. (The "90-day warning")

(2) Whether a police officer violated a driver's due process rights when he failed to give the driver a "90-day warning" even though he gave the driver a warning that failure to submit to a blood test could result in a 6-month revocation of the driver's license.

■ 1. Minn.Stat. § 169.127 (1976) (repealed 1978) is applicable to this case because it was in effect on the date of the offense. This statute provided for a 90-day revocation of a driver's license if a blood test revealed the driver's blood alcohol level to be .10 percent or more. There is no requirement in this section that the driver be advised that a 90-day revocation may be imposed even if the test is taken. Minn. Stat. § 169.123 (1976) (the implied consent law) provided that the driver must be advised that failure to submit to testing may result in revocation of driving privileges. Abe was advised that failure to submit could result in a 6-month revocation of his license. After conferring with his brother, an attorney, Abe consented to taking a blood test.

Abe now contends that Minn.Stat. §§ 169.123 and 169.127 are *in pari materia*, thus requiring that warnings given under each statute be identical. The state does not dispute that the statutes are *in pari materia*, but disagrees as to the results of such a conclusion. We decline to discuss the issue in detail. Whether or not §§ 169.123 and 169.127 are *in pari materia*, the fact remains that neither statute required that the 90-day warning be given. The most that either statute required was that the 6-month warning be given, as it was here.

In 1978, the legislature revised the implied consent law to require, among other things, that the 90-day warning be given. Abe argues that this was a retroactive clarifying amendment, but we reject this argument for two reasons. First, the effective date of the amendment was September 1, 1978, almost 8 months after the date of arrest. Further, in the 1978 revision the legislature seems to have anticipated the attempt of some drivers to have the warnings "read back" to 1976. In order to prevent this, the legislature provided that the revised statute was—

[E]ffective September 1, 1978 and shall apply to all offenses committed on or after that date. Cases pending in the courts of this state on September 1, 1978 shall be subject to the procedures in effect prior to the effective date of this act for adjudication and appellate review of the relevant offenses.

1978 Minn. Laws, ch. 727, § 12. This statement must, it seems, lay to rest any question that the legislature intended merely to clarify prior laws. Rather, the 1978 revision created new procedures, separate from those previously applicable, which the legislature specifically intended to take effect only after September 1, 1978. In the face of this language, this court will not try to enforce a different advisory scheme.

■ 2. Abe contends that failure to give him a 90-day warning violated his due process rights because he should have been given all relevant information about the conse-

quences of consenting to the blood test before he decided whether to consent to it. In our recent decision *State Dept. of Pub. Safety v. Wiehle,* 287 N.W.2d 416 (Minn. 1979), we held that the implied consent law established a driver's continuing consent to testing. Further, we specifically declined to confer any "rights" on the driver to withdraw his consent. Since Abe had already consented to taking the blood test, he could only prevent the test by withdrawing his consent. In this regard, he received the information which the legislature required to be given concerning the withdrawal of consent. The information was accurate and relevant. It also promoted peaceable submission to the blood test. Abe did not withdraw his consent. There is nothing in the statutory procedures which were followed in this case that involved any violation of due process. We find no merit to Abe's claim.

Affirmed.