Christine E. DAVIS, Petitioner, Appellant (C4–93–874),

Jason Curtis Hawker, Petitioner, Respondent (C6–93–1122),

Marlana Katherine Schmelzer, Petitioner, Respondent (C8–93–1123),

Arlene Ann Lettow, Petitioner, Respondent (CX–93–1124),

Scott L. Zimmerman, Petitioner, Appellant (C3–93–1143),

Lloyd Dennis Iverson, Petitioner, Respondent (C7–93–1226),

Jeffrey Lawrence Yorek, Petitioner, Respondent (C9–93–1227),

David Gary Dopp, Petitioner, Respondent (C0–93–1228),

Thomas Edward Decker, Petitioner, Respondent (C2–93–1229),

Arne Marvin Berg, Petitioner, Respondent (C4–93–1393),

Robert Arleigh Willetts, Petitioner, Respondent (C6–93–1394),

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent (C4–93–874, C3–93–1143). Appellant (C6–93–1122, C8–93–1123, CX–93–1124, C7–93–1226, C9–93–1227, C0–93–1228, C2–93–1229, C4–93–1393, C6–93–1394).

Nos. C4–93–874, C6–93–1122, C8–93–1123, CX–93–1124, C3–93–1143, C7–93–1226, C9–93–1227, C0–93–1228, C2–93–1229, C4–93–1393, C6–93–1394.

Court of Appeals of Minnesota.

Nov. 30, 1993.

Review Granted Jan. 21, 1994.

Faison T. Sessoms, Jr., Minneapolis, for
Christine E. Davis and Scott L. Zimmerman.

Paul B. Ahern, Froberg & Ahern, P.A., Minnetonka, for Jason Curtis Hawker.

Richard L. Swanson, Chaska, for Marlana Katherine Schmelzer, Arlene Ann Lettow, Lloyd Dennis Iverson, Jeffrey Lawrence Yorek, David Gary Dopp and Thomas Edward Decker.

James H. Leviton, Faison T. Sessoms, Jr., Minneapolis, for Arne Marvin Berg.

Howard S. Carp, Minneapolis, for Robert Arleigh Willetts.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Jeffrey F. Lebowski, Joel A. Watne, Asst. Attys. Gen., St. Paul, for Commissioner of Public Safety.

Considered and decided by ANDERSON, C.J., and PARKER, HUSPENI, CRIPPEN, SCHUMACHER, SHORT, and AMUNDSON, JJ.*

## OPINION

ANDERSON, Chief Judge.

These appeals were consolidated to consider related issues concerning constitutional and statutory challenges to the implied consent law. In addition, one case raises a probable cause issue, and another raises a right to counsel claim.

We uphold the implied consent law as against challenges on fundamental fairness, procedural due process, and statutory grounds. We find premature the drivers' claims that related changes in other laws convert the implied consent proceeding into a criminal proceeding. The larger reinstatement fee does not render the implied consent law criminal. Finally, we uphold the probable cause determination, and we agree with the district court that one driver's right to counsel was not vindicated. We affirm and reverse accordingly.

---

\* This case was heard and decided by an expanded panel. *See* Minn.App.Spec.R.Pract. 3 (each case shall be submitted to a panel of at least three judges); Minn.Stat. § 480A.08, subd. 2 (1992) (same).

## FACTS

The Commissioner of Public Safety revoked these drivers' licenses pursuant to the implied consent law. Minn.Stat. § 169.123, subd. 4 (1992). The drivers petitioned for judicial review, challenging the implied consent law on a variety of related issues. The district courts in *Hawker, Schmelzer* and *Lettow* found the law fundamentally unfair, as did the district courts in *Berg* and *Willetts.* The *Hawker, Schmelzer* and *Lettow* courts also addressed a statutory challenge to the advisory. The district courts in *Iverson, Yorek, Dopp* and *Decker,* as well as in *Berg* and *Willetts,* found the implied consent law violated procedural due process.

Eight district courts addressed the issue of whether changes in related laws converted the implied consent hearing into a criminal procedure, entitling the drivers to additional rights. The district courts in *Iverson, Yorek, Dopp* and *Decker* indicated that it did, after finding the implied consent law could not survive a general due process analysis. The courts in *Berg* and *Willetts* relied primarily on their ruling that the civil label of implied consent proceedings is no longer valid. The district courts in *Davis* and *Zimmerman* rejected the criminal due process argument. Finally, the district court in *Lettow* determined the driver's right to counsel had not been vindicated, and the district court in *Davis* rejected a probable cause argument.

This court initially consolidated *Hawker, Schmelzer, Lettow, Iverson, Yorek, Dopp* and *Decker* for oral argument, primarily to consider due process and statutory challenges. We also consolidated *Davis, Zimmerman, Berg* and *Willetts,* mainly to consider the criminal due process issue. We now consolidate both sets of cases for consideration in this opinion.

## ISSUES

I. Was Lettow's right to counsel vindicated?

II. Does the implied consent advisory violate fundamental fairness inherent in due process?

III. Does the implied consent law violate procedural due process guarantees?

IV. Does a police officer's failure to advise a driver of the right to obtain an additional test by a person of the driver's own choosing constitute prevention or denial of that right such that the license revocation should be rescinded?

V. Has the implied consent proceeding become "criminal" in nature as a result of recent changes in related laws?

VI. Did the Commissioner of Public Safety show by a preponderance of the evidence that the police officer had probable cause to arrest Zimmerman for DWI?

## ANALYSIS

### I. Lettow's Right to Counsel Claim

The first issue we address is a right to counsel claim involving only respondent Lettow. The district court found Lettow was not given a reasonable amount of time to contact an attorney, and the Commissioner challenges this determination. We affirm the district court's conclusion that Lettow's right to counsel was not vindicated.

On February 27, 1993, a deputy sheriff arrested Lettow for DWI at approximately 1:30 a.m., and read her the implied consent advisory. She said she wished to speak to an attorney. The deputy allowed her to use a telephone at 2:44 a.m., and provided her with a telephone directory.

Lettow made three telephone calls. She was unable to reach the first person called. The district court found the second call was to a friend who had been a paralegal and knew many attorneys. The friend agreed to try to contact an attorney. The deputy advised Lettow she would have to make a decision at 3:05 a.m., and suggested that she call another attorney. At 3:05, the deputy advised Lettow that her time had expired. He allowed her to call her friend back, but the line was busy. At 3:07, the deputy advised Lettow that she would have to make a

decision without an attorney and asked if she would take a breath test.

Lettow refused to take a test, and her driver's license was revoked. The district court ordered the revocation rescinded, holding that Lettow was not given a reasonable amount of time to contact an attorney.

■ A driver has a limited right to consult with an attorney before making a decision to take an implied consent test. *Friedman v. Commissioner of Pub. Safety*, 473 N.W.2d 828, 835 (Minn.1991).

> The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.

*Prideaux v. State, Dep't of Pub. Safety*, 310 Minn. 405, 421, 247 N.W.2d 385, 394 (1976), *quoted in Friedman*, 473 N.W.2d at 835.

■ Whether the officer provides the driver with a reasonable amount of time to contact an attorney involves questions of both fact and law. *Parsons v. Commissioner of Pub. Safety*, 488 N.W.2d 500, 501 (Minn.App. 1992). This court has discussed a nonexclusive list of factors that are relevant in determining whether a given amount of time was reasonable. *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 842 (Minn.App.1992), *pet. for rev. denied* (Minn. Oct. 20, 1992). The factors include the time of day, the length of time the driver has been under arrest, and whether the driver made a good faith and sincere effort to contact counsel. *Id.* The totality of the facts must be considered. *Parsons*, 488 N.W.2d at 502.

■ We find that the district court properly used the analysis set forth in *Parsons* and *Kuhn* to conclude that Lettow was not given a reasonable amount of time to contact an attorney. The court considered several factors, including the early hour of the morning, the "obviously active" calling by Lettow's friend as shown by the busy signal at 3:05 a.m., and the officer's "arbitrary" determination that her efforts to contact an attorney would be limited to 20 minutes, coupled with

his announcement of that time limit after the allocated 20–minute period had begun to run.

We emphasize that the length of time the officer gave Lettow to contact an attorney is not determinative. In this case, however, the district court considered the relevant factors in *Parsons* and *Kuhn*, and properly applied the law to the facts. Accordingly, we hold Lettow's limited right to counsel was not vindicated, and we affirm the district court's rescission of her license revocation.

## II. Fundamental Fairness

The next issue is whether the implied consent advisory violates fundamental fairness inherent in due process. The district courts in *Hawker, Lettow* and *Schmelzer* concluded that the drivers' due process rights under the state and federal constitutions were violated. The district courts in *Berg* and *Willetts* also found the advisory fundamentally unfair.

■ If a state statute requires informing a person of certain rights and obligations before testing, this court will review the information to determine whether it comports with fundamental fairness required by due process. *South Dakota v. Neville*, 459 U.S. 553, 564–66, 103 S.Ct. 916, 923–24, 74 L.Ed.2d 748 (1983); *McDonnell v. Commissioner of Pub. Safety*, 473 N.W.2d 848, 853–55 (Minn.1991); *State v. Abe*, 289 N.W.2d 158, 160–61 (Minn.1980). Challenging the statute's constitutionality is a question of law that this court considers de novo. *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993).

■ The implied consent procedure is statutorily created. Minn.Stat. § 169.123 (1992). A police officer may lawfully require a DWI suspect to submit to an alcohol concentration test without violating due process. *Schmerber v. California*, 384 U.S. 757, 760, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908 (1966). The Minnesota Supreme Court, following *Schmerber*, has stated that the legislature could repeal the implied consent law and direct police officers to administer chemical tests against a suspect's will. *Nyflot v. Commissioner of Pub. Safety*, 369 N.W.2d 512, 517 (Minn.), *appeal dismissed*, 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The legislature has not done so to avoid confrontations that could occur if police officers

forced drivers to submit to testing. *Id.; see also State v. Schauer*, 501 N.W.2d 673, 675–76 (Minn.App.1993) (implied consent procedure statutory and not constitutionally required).

When an officer requests an implied consent test, the driver must be informed:

> (1) that Minnesota law requires the person to take a test to determine if the person is under the influence of alcohol or a controlled substance * * *;

> (2) that refusal to take a test is a crime;

> *   *   *   *   *   *

> (4) that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test.

Minn.Stat. § 169.123, subd. 2(b) (1992) (provisions for commercial motor vehicles and criminal vehicular homicide omitted).

The drivers contend that this advisory violates fundamental fairness because it (1) does not advise the driver of certain consequences, (2) does not advise the driver of the statutory right to an independent test while in custody, and (3) advises drivers that refusal to take the test is a crime. We disagree.

■ First, we will address the drivers' claims that certain omissions from the advisory render it unconstitutional. The advisory does not inform drivers that a license revocation can result from test refusal or failure. The drivers argue that this violates fundamental fairness because they were not informed of some of the serious consequences that can arise from taking or refusing a test. The advisory also does not inform drivers that they have the right to an additional test while in custody. Minn.Stat. § 169.123, subd. 3. The drivers assert that fundamental fairness requires that they be informed of these rights.

As discussed in this opinion's first section, drivers have a limited right to consult with counsel before deciding whether to submit to testing. *Friedman*, 473 N.W.2d at 835. The supreme court, in discussing its decision that drivers have this right, stated:

> In the facts before this court, the driver was confused about the legal ramifications

of her decision. As is often the case, the driver at this critical stage looked to the police for guidance. An attorney, not a police officer, is the appropriate source of legal advice. An attorney functions as an objective advisor who could explain the alternative choices. We think the Minnesota Constitution protects the individuals' right to consult counsel when confronted with this decision.

*Id.* at 833.

When a driver is given a reasonable opportunity to consult with counsel, the attorney can better guide the driver through the complexities of the implied consent law than can a police officer. *See id.* The attorney will be able to give the driver fact-specific advice. *See, e.g.,* Minn.Stat. § 169.123, subd. 4 (varying lengths of revocation for test failure, based on driver's history). The attorney is also better able to explain the extent and scope of the right to an additional test while the driver is in custody. *See* Minn.Stat. § 169.123, subd. 3 (limited to when person is in custody, must be after implied consent test, and at no expense to the state). Further, the attorney may assist the driver in obtaining the additional test. *Cf. Frost v. Commissioner of Pub. Safety,* 348 N.W.2d 803, 804 (Minn.App.1984) (only assistance officer must offer driver in obtaining additional test is to allow use of telephone).

■ Once the supreme court announced the limited right to counsel in *Friedman,* the legislature had the power to shift from the police officer to the attorney the burden of informing the driver about the details of rights and sanctions under the implied consent law. *See Nyflot,* 369 N.W.2d at 517 (where no federal constitutional right to counsel, legislature had authority to decide whether drivers should be given right to counsel). When the police officer invokes the implied consent law, the limited right to counsel is the main protection. As demonstrated by our analysis of the district court's decision in *Lettow,* courts will review drivers' claims that the police officers did not vindicate this right and ensure it is protected.

Second, we address the drivers' contention that the present advisory is misleading because a driver is advised that refusal to take a test is a crime. *See* Minn.Stat. § 169.123, subd. 2(b)(2). The drivers argue that this is misleading because if the driver refuses, the driver will most likely be charged with both the crime of refusing testing and the crime of driving while under the influence. They also argue that the statement that refusal is a crime is inaccurate, because the implied consent law allows a driver to assert that the refusal to submit to testing was reasonable. *See* Minn.Stat. § 169.123, subd. 6 (petitioner may assert as an affirmative defense that at the time of the refusal, the refusal was based upon reasonable grounds).

■ We conclude that a driver's ability to assert reasonable refusal as a defense in an implied consent proceeding does not render the advisory misleading because it does not change the fact that refusal is a crime. Minn.Stat. § 169.121, subd. 1a (1992). It should be readily apparent to the drivers who are being asked to submit to an alcohol concentration test that they are subject to the crime of driving while under the influence.

■ Further, the advisory makes it clear that taking or refusing the test is not a "safe harbor." *See Neville,* 459 U.S. at 565, 103 S.Ct. at 924. The drivers are given a clear indication of the seriousness of their situation because they are told that they must take a test, that refusal is a crime, and that they are entitled to consult with an attorney. Given the drivers' limited right to counsel, failure to advise them of all potential consequences is not fundamentally unfair. *See Abe,* 289 N.W.2d at 161; *Catlin v. Commissioner of Pub. Safety,* 490 N.W.2d 445, 446–47 (Minn. App.1992).

Finally, the district courts indicated that their decisions were based upon both federal and state constitutional provisions. The supreme court and this court have held that the due process guarantees of the federal and state constitution are identical. *Sartori v. Harnischfeger Corp.,* 432 N.W.2d 448, 453 (Minn.1988); *State v. Morrow,* 492 N.W.2d 539, 547 (Minn.App.1992). We follow this precedent and decline to expand state rights further in this case.

## III. Procedural Due Process

The district courts in *Iverson, Yorek, Dopp* and *Decker* concluded that the prehearing license revocation procedures in the implied consent law violate procedural due process. The *Berg* and *Willetts* courts also addressed this issue. The supreme court upheld the law in the last major review of the implied consent procedures on procedural due process grounds. *Heddan v. Dirkswager*, 336 N.W.2d 54 (Minn.1983). The parties dispute whether the changes in the implied consent law since *Heddan* have rendered it unconstitutional on procedural due process grounds.

A driver's license is an important property interest subject to due process protection. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). A hearing is required before an individual can be finally deprived of the property interest. *Wolff v. McDonnell*, 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975–76, 41 L.Ed.2d 935 (1974). The balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, 335–36, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), is used to address the constitutionality of prehearing license revocation procedures. *Mackey v. Montrym*, 443 U.S. 1, 10–11, 99 S.Ct. 2612, 2617, 61 L.Ed.2d 321 (1979). The test requires weighing the nature and weight of the private interest, the likelihood of erroneous deprivation, and the public interest. *Heddan*, 336 N.W.2d at 59–60.

The first factor is the nature and weight of the private interest affected by the official action challenged. *Montrym*, 443 U.S. at 11, 99 S.Ct. at 2617. The private interest is the drivers' interest in the continued possession and use of the license pending the outcome of the hearing. *See id.; Heddan*, 336 N.W.2d at 59–60. The district courts focused on the drivers' interest in the continued possession of a license and the potential job loss that could occur when the license is revoked.

The actual weight given the private interest depends upon three factors: the duration of the revocation, the availability of hardship relief, and the availability of prompt postrevocation review. *Montrym*, 443 U.S. at 11–12, 99 S.Ct. at 2617–18; *Heddan*, 336 N.W.2d at 60.

In 1982, when the implied consent law was reviewed in *Heddan*, test refusal led to revocation for six months, and test failure required revocation for 90 days. *Heddan*, 336 N.W.2d at 60. The *Heddan* court cited *Dixon v. Love*, 431 U.S. 105, 108 n. 4, 97 S.Ct. 1723, 1725 n. 4, 52 L.Ed.2d 172 (1977), which upheld prehearing license revocations, where the license suspension could be for as long as one year or more. *Heddan*, 336 N.W.2d at 60.

Under the current law, if a driver refuses testing, the license is revoked for a period of one year. Minn.Stat. § 169.123, subd. 4 (1992). If a driver fails the test, the revocation is for a period of 90 days; if the driver's license has been revoked once within the past five years, the period of revocation for test failure is 180 days. *Id.* Since the length of the revocation is not longer than the period in *Love*, we do not find that these changes significantly affect the weight of the private interest.

The availability of hardship relief must also be analyzed. *Montrym*, 443 U.S. at 12, 99 S.Ct. at 2618. Under current law, as under the statute analyzed in *Heddan*, drivers receive a temporary seven-day license at the time their licenses are revoked. Minn. Stat. § 169.123, subd. 5a. But, unlike *Heddan*, a limited license is no longer available immediately. Minn.Stat. § 171.30, subd. 2a (1992). Even for first-time offenders, there is a waiting period of 15 days during which no limited license is available. Minn.Stat. § 171.30, subd. 2a(1).

The district courts here found the mandatory minimum waiting period of at least 15 days significant because it could result in a job loss. This hardship factor reflects the importance of a license to a driver's continued employment. *See Montrym*, 443 U.S. at 12, 99 S.Ct. at 2617 (state's revocation of license may cause economic hardship for which the driver cannot be made whole). The cases do not provide that potential job loss or the availability of hardship relief is the determinative factor. *See Montrym*, 443 U.S. at 12, 99 S.Ct. at 2618; *Heddan*, 336 N.W.2d at 60. Nor do we find the changes

since *Heddan* substantial. Further, hardship relief is generally available after a waiting period.

Finally, the availability of prompt postrevocation review must be considered. The relevant law is unchanged since *Heddan*. Administrative review is immediately available upon application by the driver, and the decision must be issued within 15 days after receipt of the written request for review. Minn.Stat. § 169.123, subd. 5b (1992).

Judicial review is also available, and a hearing will be conducted at "the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." Minn.Stat. § 169.123, subd. 6. It is not jurisdictionally fatal to fail to meet the 60-day requirement. *Szczech v. Commissioner of Pub. Safety*, 343 N.W.2d 305, 308-09 (Minn.App.1984). If, however, the hearing is not conducted within 60 days, the reviewing court may order a stay of the balance of the revocation period. Minn.Stat. § 169.123, subd. 5c.

The district courts noted this delay may result in increased job loss due to lack of transportation. The same statutory procedure was upheld under *Heddan*, and we may not accord any greater weight to the availability of prompt postrevocation review than did the court in *Heddan*.

█ The drivers also argue that the implied consent proceeding affects liberty interests, requiring additional due process protections, because a license revocation can serve as a basis for a future gross misdemeanor DWI in certain circumstances. Minn.Stat. § 169.121, subd. 3(c)(2) (1992); 1992 Minn. Laws ch. 570, art. I, §§ 7, 32 (effective January 1, 1993, it is a gross misdemeanor to refuse testing within five years of a prior license revocation or within ten years of two or more prior license revocations). As discussed in section five, the implied consent proceeding is not the proper forum in which to raise this issue. Instead, such arguments should be raised at the time a person is charged with gross misdemeanor DWI pursuant to Minn.Stat. § 169.121, subd. 3(c)(2). *See, e.g., State v. Nordstrom*, 331 N.W.2d 901, 902 (Minn.1983) (challenging use of prior

misdemeanor DWI to convert subsequent DWI into gross misdemeanor DWI).

The second factor is the likelihood of erroneous deprivation of the private interest involved. *See Heddan*, 336 N.W.2d at 61.

> [W]hen prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be.

*Montrym*, 443 U.S. at 13, 99 S.Ct. at 2618.

The district courts in several cases specifically recognized the validity of the Intoxilyzer, and the accuracy of the test results are not at issue. Rather, the courts relied upon a determination that the advisory is inadequate and ruled that the individual's uninformed decision about taking or refusing the test increased the risk of erroneous deprivation of the license. Here, the courts expanded the inquiry to include the drivers' understanding of the advisory, while under *Montrym*, the inquiry was limited to whether the facts justified the official action. *Id.* at 13-14, 99 S.Ct. at 2618-19.

There is a risk of erroneous deprivation in test refusal cases. But the relevant risk is limited to erroneous official decisions, based on the "historical facts," that the driver did in fact refuse testing. *Id.* at 14, 99 S.Ct. at 2619. This risk has been deemed "insubstantial." *Id.* The risk does not include the possibility that the driver may have made the wrong choice.

There is also a risk of erroneous deprivation in test failure cases. The *Heddan* court acknowledged that breath testing conducted in accordance with Bureau of Criminal Apprehension procedures was a reliable and accurate means of measuring alcohol concentration. *Heddan*, 336 N.W.2d at 62. Several district courts here specifically recognized the validity of the Intoxilyzer breath testing device. We note also that the Commissioner is authorized to revoke a driver's license only upon certification by the officer that probable cause existed and that the driver either re-

fused to take an implied consent test or took the test with a result of an alcohol concentration of .10 or more. Minn.Stat. § 169.123, subd. 4. The supreme court in *Heddan* determined that under this procedure there was no undue risk of erroneous deprivation. *Heddan,* 336 N.W.2d at 62.

We disagree with the district courts' use of the driver's understanding of the implied consent law as a factor. We see no greater risk of erroneous deprivation than did the supreme court in *Heddan.*

The final *Montrym* factor involves the public interest in safe highways, and the administrative and fiscal burden that would result from the substitute procedures sought. *Montrym,* 443 U.S. at 17, 99 S.Ct. at 2620. In *Heddan,* the supreme court recognized the compelling interest in protecting the health and safety of citizens from drunken drivers, which justified revoking the license pending the outcome of prompt postsuspension hearings. *Heddan,* 336 N.W.2d at 62. The prehearing revocation system also continues to ease fiscal and administrative burdens. *Id.* at 653. These interests remain unchanged.

In summary, under the applicable balancing test, we conclude the current implied consent law does not violate procedural due process.

## IV. Statutory Challenge

The next issue is whether the rescissions of the license revocations should be upheld on statutory grounds. The courts in *Hawker* and *Schmelzer* ruled that the police officers' failure to advise of the right to an additional test constituted prevention or denial of the additional test.

■ A person who is tested under the implied consent law has the right to have someone of the person's own choosing administer an additional chemical test. Minn.Stat. § 169.123, subd. 3. This additional test sample must be obtained at the place where the person is in custody, after the implied consent test, and at no expense to the state. *Id.*

The failure or inability to obtain an additional test or tests by a person shall not preclude the admission in evidence of the test taken at the direction of a peace officer unless the additional test was prevented or denied by the peace officer.

*Id.* This section is "nothing more than an *affirmation* of the right of persons *being held in custody* to have an independent test administered while being held." *Frost,* 348 N.W.2d at 805 (emphasis in original).

Previously, the implied consent advisory informed a driver that after submitting to testing, the driver had the right to have additional tests made by someone of the driver's own choosing. Minn.Stat. § 169.123, subd. 2(b)(6) (Supp.1991). The statute no longer requires that advice. Minn.Stat. § 169.123, subd. 2(b) (1992). As discussed in section two, the legislature has determined that an attorney, not a police officer, should give drivers pertinent information about the relevant law. Police officers have been cautioned by this court not to deviate from the statutory advisory. *Hallock v. Commissioner of Pub. Safety,* 372 N.W.2d 82, 83 (Minn. App.1985). Accordingly, the officers in these cases did not inform the drivers about the right to an additional test while in custody.

The drivers argue only that the police officers did not advise them of the right to an additional test. The provision in Minn.Stat. § 169.123, subd. 3 regarding preventing or denying the additional test does not concern this situation. Instead, the statute proscribes action by an officer that hampers a driver's effort to obtain an additional test. *See Theel v. Commissioner of Pub. Safety,* 447 N.W.2d 472, 474 (Minn.App.1989), *pet. for rev. denied* (Minn. Jan. 8, 1990). We conclude that the police officers did not prevent or deny an additional test within the meaning of Minn.Stat. § 169.123, subd. 3.

## V. Implied Consent as Criminal Proceeding

The drivers argue that the implied consent statute has become so punitive and so intertwined with the criminal DWI prosecution that it is now itself a criminal proceeding. They contend they are entitled to a jury trial, the presumption of innocence, and the application of the reasonable doubt standard in the license revocation hearing. The district courts in *Davis* and *Zimmerman* rejected that argument. In *Berg* and *Willetts,* the district court found that implied consent proceedings, due to recent changes in the law, "are not fully civil in nature." In *Iverson,*

*Yorek, Dopp* and *Decker,* the court briefly noted the apparent criminal nature of the implied consent proceeding.

■ The United States Supreme Court has identified seven factors for determining when a putatively civil sanction should be treated as criminal:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.

*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963) (citations and emphasis omitted).

■ Whether a particular statutory penalty is civil or criminal is a matter of statutory construction. *United States v. Ward,* 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980). Before disregarding a legislative label that a proceeding is civil, the Supreme Court has required the "clearest proof" of its criminal nature. *Id.* at 249, 100 S.Ct. at 2641; *State by Humphrey v. Alpine Air Prods. Inc.,* 500 N.W.2d 788, 792 (Minn. 1993).

The drivers point to the larger reinstatement fee for a driver whose license has been revoked for an implied consent violation or a DWI conviction. *Compare* Minn.Stat. § 171.29, subd. 2(b) (1992) ($250 fee to have license reinstated), with Minn.Stat. § 171.29, subd. 2(a) (1992) ($30 reinstatement for other drivers). The drivers contend that this larger fee is actually a fine imposed as a result of the civil revocation and this monetary penalty renders the implied consent revocation too punitive to be considered a civil sanction. The Oregon Supreme Court has held that a maximum fine of $1,000 for intoxicated driving was "strong evidence of the punitive significance that the legislature meant to give this fine." *Brown v. Multnomah County Dist. Court,* 280 Or. 95, 570 P.2d 52, 58 (1977).

■ We conclude the larger reinstatement fee, some of which is used to fund programs relating to drunken driving, does not evidence a punitive intent. *See* Minn. Stat. § 171.29, subd. 2(b)(3)–(4) (portions of fee earmarked for BCA and alcohol driver education programs). Under the *Mendoza–Martinez* test, the increased amount, a differential of $220, does not make the consequences excessive in relation to the remedial purpose of the revocation. *See Mendoza–Martinez,* 372 U.S. at 169, 83 S.Ct. at 568.

The drivers' primary argument rests on a 1992 amendment which allows implied consent license revocations to be used to enhance later DWI refusal offenses from misdemeanors to gross misdemeanors. Minn. Stat. § 169.121, subd. 3(c)(2) (1992). This argument, however, is premature.

■ A party challenging the constitutionality of a statute must show "a direct and personal harm resulting from the alleged denial of constitutional rights." *City of Minneapolis v. Wurtele,* 291 N.W.2d 386, 392 (Minn.1980); *see also Villars v. Provo,* 440 N.W.2d 160, 162 (Minn.App.1989) (specific, concrete facts showing personal harm must be alleged). The drivers in these implied consent proceedings are not subject to the enhancement provision.

■ Drivers may raise a constitutional challenge to the enhancement provision in the DWI prosecution in which it is applied against them. *Cf. State v. Friedrich,* 436 N.W.2d 475, 477–78 (Minn.App.1989) (challenge to enhancement use of Wisconsin DWI in which driver was not accorded same procedural protections as in Minnesota). A driver may not collaterally attack the validity of prior license revocations or suspensions that are used to show he was driving illegally at the time of the offense. *See State v. Cook,* 275 Minn. 571, 571–72, 148 N.W.2d 368, 369–70 (1967) (driver could not collaterally attack validity of license suspension in prosecution for driving after suspension); *State v. Hoese,* 359 N.W.2d 334, 335–36 (Minn.App.1984) (attack on validity of license revocation in aggravated DWI prosecution was improper).

■ In an enhancement case, the prior revocation alone, regardless of any conduct during that revocation, is an element of the

criminal offense. *See Hoese*, 359 N.W.2d at 335 (distinguishing challenges to an element of the offense); *see also State v. Offerman*, 378 N.W.2d 658, 659 (Minn.App.1985) (aggravating factor in aggravated DWI is not driver's prior record, as in enhancement cases, but the status of his license at the time of driving). Minn.Stat. § 169.121, subd. 3(c)(2) is an enhancement provision, but these drivers are not presently subject to it. The drivers may challenge the enhancement use of an implied consent revocation in a later gross misdemeanor DWI on any appropriate grounds, just as they can challenge the enhancement use of a prior DWI. *See generally Nordstrom*, 331 N.W.2d at 905 (challenge to enhancement use of misdemeanor DWI). Therefore, the drivers have not shown direct and personal harm warranting review of this issue.

For the same reason, the drivers' challenges to provisions establishing the crime of refusal and authorizing impoundment and forfeiture are also premature. *See* Minn. Stat. §§ 168.042 (1992) (impoundment), 169.-1217 (1992) (forfeiture). This appeal does not involve criminal charges for refusal. Therefore, we need not address the legislature's creation of the criminal offense of refusing testing.

The implied consent revocation proceeding has often been held to be civil in nature. *See, e.g., State, Dep't of Highways v. Normandin*, 284 Minn. 24, 26, 169 N.W.2d 222, 224 (1969); *Szczech*, 343 N.W.2d at 306. The supreme court has recognized that the request of chemical testing is a "critical stage" of the DWI proceeding, giving the driver a right to counsel. *Friedman*, 473 N.W.2d at 833–34. But that holding does not make the implied consent proceeding "criminal" in nature any more than did the earlier extension of a statutory right to counsel. *See Goldsworthy v. State, Dep't of Pub. Safety*, 268 N.W.2d 46, 49 n. 4 (Minn.1978) (discussing effect of *Prideaux* on civil nature of implied consent). The other changes in the implied consent statute and other laws cited by the drivers do not undermine the civil nature of implied consent proceedings.

### VI. Zimmerman's Probable Cause Challenge

■ Zimmerman contends that the Commissioner of Public Safety did not estab-

lish the existence of probable cause by a preponderance of the evidence. The determination of whether probable cause exists is a mixed question of fact and law. *Clow v. Commissioner of Pub. Safety*, 362 N.W.2d 360, 363 (Minn.App.1985), *pet. for rev. denied* (Minn. Apr. 26, 1985). Probable cause exists when all the facts and circumstances would lead a cautious person to believe that the driver was under the influence. *Johnson v. Commissioner of Pub. Safety*, 366 N.W.2d 347, 350 (Minn.App.1985).

■ Zimmerman does not dispute that the facts as testified to by the police officer, if adequately proven, would constitute probable cause. The officer, after reading his report, testified that Zimmerman smelled strongly of alcohol, had bloodshot and glassy eyes, had slurred speech, admitted drinking four to five beers, and failed three field sobriety tests. These are sufficient facts to determine that Zimmerman was driving while under the influence. *See Johnson*, 366 N.W.2d at 349 (strong odor of alcohol, slurred speech, watery and bloodshot eyes, dilated pupils); *Holtz v. Commissioner of Pub. Safety*, 340 N.W.2d 363, 365 (Minn.App.1983) (bloodshot and watery eyes, slurred speech, odor of alcohol, and uncooperative attitude).

Zimmerman argues that because (1) the officer testified he could not remember the arrest, (2) the report upon which he relied was not offered into evidence, and (3) the accuracy of the report's contents was not established, the Commissioner failed to establish his burden of proof as a matter of law. He compares the case to *Musgjerd v. Commissioner of Pub. Safety*, 384 N.W.2d 571, 574 (Minn.App.1986) (there were no observations of indicia of intoxication, and where the only facts were early morning accident on dry road, no probable cause for DWI). We disagree with this analysis.

■ The district court properly considered the police officer's testimony. While Zimmerman did not make hearsay objections below, we note that use of a report where there is insufficient recollection is not excluded by the hearsay rule. Minn.R.Evid. 803(5). Zimmerman cannot complain that the report

was not offered into evidence, because such a record may not be received unless offered by the adverse party. *Id.* Also, the officer properly referred to his reports because writings may be used to refresh recollection. Minn.R.Evid. 612. It was within the district court's discretion to pass on the facts and circumstances regarding reliance on such records. *See Walker v. Larson,* 284 Minn. 99, 107–08, 169 N.W.2d 737, 743 (1969).

The district court acted within its discretion, and it properly rejected the probable cause argument.

## DECISION

The district court's order rescinding the license revocation in *Lettow* is affirmed based on its determination that her right to counsel was not vindicated. The district courts' orders rescinding the license revocations in *Hawker, Schmelzer, Iverson, Yorek, Dopp, Decker, Berg* and *Willetts* are reversed. The district court orders in *Davis* and *Zimmerman* are affirmed.

**Affirmed in part and reversed in part.**