**Mark Alan JOHNSON, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A07–2413.

Court of Appeals of Minnesota.

Sept. 30, 2008.

Lori Swanson, Attorney General, Emerald A. Gratz, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by ROSS, Presiding Judge; MINGE, Judge; and JOHNSON, Judge.

## OPINION

MINGE, Judge.

Appellant challenges the district court's decision sustaining the revocation of his license to drive under the implied-consent law, arguing that the police officer's failure to check the appropriate box on the "Implied Consent Law Peace Officer's Certificate" violated the requirement of Minn. Stat. § 169A.52, subd. 4(a) (2006), that test results be certified. Appellant also argues that such an omission violated his right to due process. Because the due process argument is not meritorious and because the police officer certified the test results by forwarding to the commissioner various other documents signed by the officer indicating the test results, we affirm.

## FACTS

On May 8, 2007, Officer Joseph Hastings stopped a vehicle driven by appellant Mark Alan Johnson after he observed him speeding and crossing the center line. Appellant got out of his vehicle and was stumbling. The officer approached appellant and explained the reason for the stop, to which appellant responded, "[Y]ou got me." While speaking with him, the officer noticed that appellant had an odor of alcohol and watery eyes. The officer asked if he had been drinking, and appellant responded, "[Y]eah, I'm drunk." Appellant agreed to take a preliminary breath test (PBT), but because the PBT machine was not functioning properly, the officer was unable to obtain a valid test result. Appellant refused to perform other field sobriety

Richard C. Kenly, Backus, MN, for appellant.

tests and was arrested for driving under the influence of alcohol.

After transporting appellant to the Cass County jail, the officer read the Implied Consent Advisory to him. Appellant agreed to take a breath test, which recorded appellant's alcohol concentration at .25. The officer completed the Implied Consent Law Peace Officer's Certificate ("Peace Officer's Certificate"), the Implied Consent Advisory form, a breath-test record, an arrest report for the Cass County Sheriff's Office, a narrative report, and the Notice and Order of Revocation form with a seven-day temporary license. The officer sent the Peace Officer's Certificate together with these other documents to Cass County, which forwarded them to respondent Commissioner of Public Safety. The commissioner revoked appellant's license pursuant to the implied-consent law. *See* Minn.Stat. § 169A.52, subds. 3(a), 4(a) (2006).

At the implied-consent hearing, appellant raised several issues regarding the Peace Officer's Certificate. The Peace Officer's Certificate is a form completed by the arresting officer that provides information regarding the driver's arrest, including the driver's identifying information, the reason for initial contact, the probable cause that person was driving while impaired, and the results of the officer's request that the driver submit to testing for the presence of alcohol or controlled substances. Appellant asserted that the officer did not properly certify his revocation to the commissioner as required by Minn. Stat. § 169A.52, subd. 4(a) (2006), because the officer did not check any box under question 9 of the Peace Officer's Certificate that read:

The person: (X APPLICABLE BOX)

☐ Refused to provide a test sample to determine the presence of alcohol or hazardous or controlled substance or its metabolite.

☐ Provided a sample blood, breath or urine which indicated an alcohol concentration of .08 or more.

☐ Provided a sample blood or urine which indicated the presence of a hazardous substance or schedule I or II controlled substance or its metabolite, other than marijuana or THC.

Further, in completing question 6 of the certificate, the officer both checked the box "DWI arrest" and the box "Failed PBT with AC of .08 or more." Because the PBT machine was not functioning properly and a valid sample was not obtained, checking that second box was a mistake.

Following the implied-consent hearing, the district court issued an order sustaining appellant's implied-consent revocation. The district court found:

> On the POC [Peace Officer's Certificate], Officer Hastings did not check the box in paragraph 9 indicating that he provided a breath sample revealing an alcohol concentration of .08 or more. Instead, the test result of .25 was written into the POC. The test result was also written into the Notice and Order of Revocation and 7-day temporary license. This paperwork was then submitted to the Commissioner of Public Safety.[1]

The district court determined that "although the implied consent statute has been technically violated given that the box in question number 9 was left unchecked, Officer Hastings certified that Petitioner's BAC was .25 when he submit-

---

1. We observe that although the Peace Officer's Certificate contains a notation of ".25," it was unclear at trial who made the notation.

ted his paperwork to the Commissioner." This appeal follows.

## ISSUES

I. Did the district court properly sustain appellant's license revocation under the implied consent law?

II. Did the officer's failure to check the appropriate box deprive appellant of due process?

## ANALYSIS

### I.

 The first issue is whether the district court erred in concluding that the officer complied with the certification requirement in Minn.Stat. § 169A.52, subd. 4(a) (2006), despite the officer's failure to properly check two boxes on the Peace Officer's Certificate. Statutory interpretation presents a question of law, which we review de novo. *Sands v. Comm'r of Pub. Safety*, 744 N.W.2d 24, 26 (Minn.App. 2008). The relevant portion of Minn.Stat. § 169A.52, subd. 4(a) states:

> Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired) and *that the person submitted to a test and the test results indicate an alcohol concentration of 0.08 or more* or the presence of a controlled substance listed in schedule I or II ... then the commissioner shall revoke the person's license....

(Emphasis added). The Minnesota Supreme Court has "repeatedly recognized that laws prohibiting a person from driving a motor vehicle while intoxicated are remedial statutes. Consequently, such laws are liberally interpreted in favor of the public interest and against the private interest of

the drivers involved." *State v. Hanson*, 543 N.W.2d 84, 89 (Minn.1996) (quotation omitted).

Here, although the officer did not check the box under question 9 on the Peace Officer's Certificate indicating that appellant provided a "sample ... which indicated an alcohol concentration of .08 or more," the officer submitted to the commissioner the following documents: (1) his narrative report, which stated that appellant's alcohol concentration was .25; and (2) the Notice and Order of Revocation, where the officer both filled in the blank following the phrase "Intoxilizer Test Results" with the number " .25" and checked the box following the statement that "[b]ecause you submitted to a breath test which disclosed an alcohol concentration of 0.08 or more...." Both of these documents were signed by the officer. Further, the Peace Officer's Certificate directs the officer to "[a]ttach Notice of Revocation ..., test results, and police reports...." In this case, the breath-test results were sent to the commissioner as directed, and it is undisputed that the results indicated appellant's alcohol concentration was .25. Under these circumstances, we conclude that forwarding these documents signed by the officer to the commissioner along with the Peace Officer's Certificate suffices as a "certification" that the test results were true, accurate and genuine.

Appellant seems to suggest that "certification" can only be sufficient when the officer checks all appropriate boxes on the Peace Officer's Certificate. But the statute does not establish the "Peace Officer's Certificate" form, mandate that form be submitted, or require that such certificate be completed in a certain manner. Furthermore, appellant cannot point to any definition of "certification" in the statute

or in caselaw to support this proposition.[2] While we encourage officers to complete paperwork—including the Peace Officer's Certificate—as carefully and accurately as possible, it cannot be said that errors on the Peace Officer's Certificate automatically result in reversal of a revocation. Accordingly, we affirm the district court's order sustaining the revocation.

## II.

■ The second issue is whether appellant's right to procedural due process was violated when the officer failed to accurately complete the Peace Officer's Certificate. Both the United States and the Minnesota Constitutions provide that no person be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. This court has recognized that "[a] driver's license is an important property interest subject to due process protection." *Davis v. Comm'r of Pub. Safety*, 509 N.W.2d 380, 388 (Minn.App.1993), *aff'd*, 517 N.W.2d 901 (Minn.1994); *see also Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). But "[a]n appellant cannot assert a procedural due-process claim without first establishing that he has suffered a 'direct and personal harm' resulting from the alleged denial of his constitutional rights." *Riehm v. Comm'r of Pub. Safety*, 745 N.W.2d 869, 877 (Minn.App.2008) (quoting *Davis*, 509 N.W.2d at 391), *review denied* (Minn. May 20, 2008).

Here, appellant does not identify the "direct and personal harm" that he suffered from the officer's failure to check the appropriate box. Appellant does not claim he was deprived of a hearing, nor has he

identified how the officer's box-checking oversights harmed him. It is undisputed that appellant's breath-test results—which revealed an alcohol concentration of .25—were sent to the commissioner. Appellant is not challenging the validity of the test results, nor is he challenging his arrest for driving under the influence, his admission that he was drunk, or the officer's testimony that he smelled of alcohol, had watery eyes, refused to perform the field sobriety tests, and exhibited poor balance. The officer's failure to check the appropriate box does not change the *undisputed* underlying facts giving rise to appellant's revocation. Further, to the extent that he is arguing the erroneously checked PBT-failure box violates his due process rights, there is no indication that the commissioner took the PBT into consideration, especially where the breath-test report undisputedly indicated an alcohol concentration of .25.

We conclude that this record does not support appellant's claim that he was denied due process.

## DECISION

The police officer certified appellant's test results by forwarding to the commissioner documents signed by the officer indicating the results of appellant's breath tests. Accordingly, we affirm the district court's decision sustaining the revocation of appellant's driving privileges. Appellant's due process claim is not meritorious.

**Affirmed.**

2. Appellant cites *Godderz v. Comm'r of Pub. Safety*, 369 N.W.2d 606 (Minn.App.1985) to support his contention that the test results were not properly certified. But *Godderz* involved the question of whether one adequate breath sample is sufficient to revoke a license where the statute explicitly required two adequate breath samples. *Id.* at 607. Clearly, the facts and issue in *Godderz* differ from the present case, rendering the analysis and conclusion in *Godderz* immaterial.