Christopher John WILLIAMS,
petitioner, Respondent,

Mark Alan Gehrke, petitioner,
Respondent,

Mary Jo Higgins, petitioner,
Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

Nos. A12–1548, A12–1576, A12–1578.

Court of Appeals of Minnesota.

April 15, 2013.

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, MN, for respondents.

Lori Swanson, Attorney General, Natasha Karn, Assistant Attorney General, St. Paul, MN, for appellant.

Considered and decided by KIRK, Presiding Judge; STONEBURNER, Judge; and HUDSON, Judge.

## OPINION

KIRK, Judge.

This is a consolidated appeal by appellant Minnesota Commissioner of Public Safety of the district courts' rescissions of the revocations of the driver's licenses of respondents Christopher John Williams, Mark Alan Gehrke, and Mary Jo Higgins under Minnesota's implied consent law, Minn.Stat. §§ 169A.50–.53 (2012). The commissioner argues that there is no statutory or procedural due process basis for the district courts' conclusions that respondents were entitled to a full seven days' notice before their mailed notices of revocation became effective. We agree, and we reverse the rescissions of the revocations of respondents' licenses.

## FACTS

The facts are not in dispute and are functionally identical for each of the three respondents. Each respondent was arrested on suspicion of driving while

impaired (DWI). Each respondent submitted to a urine or blood test. Each subsequent analysis of the test samples indicated that each respondent was driving in violation of Minnesota's implied consent law. Each respondent received a notice of revocation mailed by the commissioner with a mailing date marked on the letter. Each notice was postmarked one day after the mailing date indicated on the notice. For example, the commissioner sent Williams a notice of revocation with a mailing date of January 25, 2012. However, the envelope in which the notice was mailed was postmarked January 26, 2012.

Each notice of revocation sent by the commissioner provided a date that the revocation was to become effective. Each of those dates fell ten days after the mailing date of the notice, but nine days after the date postmarked on the envelope. Using Williams as an example again, his notice indicated that the revocation was to become effective February 4, 2012. Allowing for three days' mailing time to elapse before Williams would be deemed to have received the notice as required under Minn.Stat. § 169A.52, subd. 6, the revocation thus became effective seven days after the mailing date printed on the notification letter. However because the notice was postmarked a day later, he received only six days' notice before the revocation became effective.

Each respondent timely sought judicial review of the revocation in district court pursuant to Minn.Stat. § 169A.53, subd. 2(a). The respondents each argued that their procedural due process rights were violated because the commissioner's notification, when measured from the postmark, failed to provide a full seven days of driving privileges between receipt of the notice and revocation of the license. Each district court concluded that the commission-

er's notices violated respondents' rights to procedural due process and ordered the revocations rescinded.

The commissioner appealed each ruling and this court consolidated the appeals.

## ISSUE

Were respondents' procedural due process rights violated when they received six days' notice before their license revocations became effective instead of seven days' notice?

## ANALYSIS

The commissioner argues that the district courts erred when they found that respondents' procedural due process rights were violated when they received six days' notice before their revocations became effective. Respondents contend that the denial of even one day of driving privileges to which they would otherwise be entitled if they had received immediate notice of revocation from a peace officer is an unconstitutional deprivation of their procedural due process rights.

The United States and Minnesota Constitutions provide that a person's liberty will not be deprived by the government "without due process of law." U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. "This constitutional question involves the application of law to undisputed facts. Accordingly, our review is de novo." *State v. Wiltgen*, 737 N.W.2d 561, 566 (Minn.2007). Statutory interpretation is a question of law, which this court also reviews de novo. *Johnson v. Comm'r of Pub. Safety*, 756 N.W.2d 140, 143 (Minn.App.2008), *review denied* (Minn. Dec. 16, 2008).

**A. There is no statutory requirement that a seven-day notice of revocation be provided to respondents.**

We need only briefly note that there is no statutory basis for requiring the com-

missioner to provide seven days' notice to licensees receiving notice of revocation by mail.[1] It is true that a licensee who refuses a peace officer's demand to submit to a chemical test, or who submits to a test the results of which immediately indicate an alcohol concentration of 0.08 or more, is subject to immediate revocation of his driver's license and the issuance of a temporary, seven-day license by the peace officer. Minn.Stat. § 169A.52, subd. 7. But respondents were not facing immediate revocation. Instead, they submitted to fluid testing and waited weeks or months for a revocation notice to come in the mail from the commissioner. A notice of revocation mailed by the commissioner is deemed received three days after being mailed. Minn.Stat. § 169A.52, subd. 6. Unlike an immediate revocation, there is no statutory provision either for a temporary license or for the revocation to become effective seven days after receipt of the notice. Thus the only theory on which respondents proceed is their assertion of a procedural due process right to seven days of temporary driving privileges.

**B. The abridgment of one day of driving privileges is a legally cognizable harm.**

■ The commissioner contends that respondents lacked standing to bring a procedural due process claim because: (1) they did not suffer a legally cognizable harm, and (2) even if the loss of one day of driving privileges is a cognizable harm, respondents had weeks or months of time before receiving the revocation letter to prepare for the revocation. Respondents contend that the legally cognizable harm they suffered is not the revocation of their driving privileges but the *premature* revocation of their driving privileges, and that the denial of just one day of driving privileges is a deprivation of their due process rights.

■ "To have standing, a plaintiff must show a personal stake in the outcome of the controversy, and must allege specific, concrete facts showing she has been personally harmed." *Villars v. Provo*, 440 N.W.2d 160, 162 (Minn.App.1989). "[T]here is no standing to raise a constitutional challenge absent a direct and personal harm resulting from the alleged denial of constitutional rights." *City of Minneapolis v. Wurtele*, 291 N.W.2d 386, 393 (Minn.1980). Minnesota courts recognize that "[a] license to drive is a protected interest that cannot be deprived without procedural due process." *Riehm v. Comm'r of Pub. Safety*, 745 N.W.2d 869, 877 (Minn.App.2008) (citing *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971)), *review denied* (Minn. May 20, 2008). "[E]ven a day's loss of a driver's license can inflict grave injury upon a person who depends upon an automobile for continued employment in his job." *Davis v. Comm'r of Pub. Safety*, 517 N.W.2d 901, 905 (Minn.1994) (quoting *Mackey v. Montrym*, 443 U.S. 1, 30, 99 S.Ct. 2612, 2627, 61 L.Ed.2d 321 (1979) (Stewart, J., dissenting)). We conclude that the abridgment of one day of driving privileges that respondents might otherwise be entitled to receive visits a facial procedural due process harm upon them.

1. We note that respondents, in their brief, make repeated reference to their entitlement to a seven-day temporary license. The seven-day temporary license is a statutorily created mechanism available to drivers facing immediate revocation of their driver's licenses. Minn.Stat. § 169A.52, subd. 7. Respondents agree that a seven-day license is not contemplated by statute for drivers facing revocation mailed by the commissioner. What, in fact, respondents are arguing for is not a seven-day temporary license but a seven-day period between receiving notice of the revocation and the imposition of the revocation.

The commissioner also suggests that each respondent had weeks and months to drive while awaiting notice that their licenses were being revoked, and that this waiting period diminishes any harm attendant on the denial of a day of driving privileges after they received notice of the revocation. This approach is problematic because it is well settled that a due process violation is not justiciable until the alleged violation has actually occurred. *See State v. Colsch,* 284 N.W.2d 839, 842 (Minn.1979) (holding that a challenge to a probationary condition permitting warrantless searches of Colsch was not justiciable because a warrantless search had not been conducted). Respondents were required to await a decision of the commissioner before having a justiciable due process controversy to bring before a court. We agree that the weeks and months of driving time respondents enjoyed before their licenses were revoked distinguishes them from drivers facing on-the-spot revocation, but as we explain later, this is relevant only to what due process they should receive. It cannot be used to turn back the clock on when a deprivation of due process ripens into a claim. Respondents have alleged sufficient harm to give them standing to bring a procedural due process claim.

### C. Respondents' procedural due process rights were not violated.

▉ The commissioner contends that procedural due process does not require that respondents receive seven days' notice of revocation. We agree.

In determining whether an individual's procedural due process rights have been abridged by a prehearing license revocation, we apply the three-part balancing test of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). We first examine "the private interest that will be affected by the official action," second, "the risk of an erroneous deprivation of such interest through the procedures used, and ... additional or substitute procedural safeguards," and third, "the [g]overnment's interest." *Id.* at 335, 96 S.Ct. at 903.

The controversy in the present case centers on the first *Eldridge* factor: the private interest affected by the official action. The Minnesota Supreme Court has identified three factors affecting the actual weight given to private interest: "(1) the duration of the revocation; (2) the availability of hardship relief; and (3) the availability of prompt post-revocation review." *Heddan v. Dirkswager,* 336 N.W.2d 54, 60 (Minn.1983) (citing *Mackey,* 443 U.S. at 11–12, 99 S.Ct. at 2617–18 (majority opinion)). Respondents argued to the district courts, and argue now on appeal, that the deprivation of one day of driving privileges directly implicates the availability of hardship relief.

In *Heddan,* our supreme court noted that when a peace officer serves immediate notice of revocation the "driver automatically receives a 7–day temporary license at the time of revocation." *Id.* The supreme court cited the temporary license as one example of how Minnesota's implied consent law contains more procedural safeguards than the Massachusetts implied consent law discussed in *Mackey,* a law that the United States Supreme Court concluded contained sufficient due process safeguards. *Id.* In referring to the availability of a seven-day temporary license, the Minnesota Supreme Court only cited to the statutory provision requiring a peace officer to provide a temporary license to a licensee facing immediate revocation. *Id.* The supreme court also identified the availability of limited licenses for drivers facing revocation as another example of hardship relief not found in Massachusetts. *Id.* We note that the availability

of limited licenses is even more limited now than at the time of *Heddan,* yet this reduced availability does not run afoul of due process requirements. *Hamilton v. Comm'r of Pub. Safety,* 600 N.W.2d 720, 724 (Minn.1999).

The supreme court has made no reference to a required notice period before the revocation takes effect when the commissioner sends a licensee notice of revocation. It is the supreme court's favorable comments in *Heddan* on the seven-day temporary license that respondents argue obligate the commissioner to provide seven days' notice to respondents.

Respondents are contorting the holding of *Heddan.* In *Heddan,* the supreme court did not indicate that the existence of a seven-day temporary license is the keystone to the implied consent law's constitutionality. Indeed, a temporary license is but one procedural safeguard over and above the safeguards in the Massachusetts law, which itself passed constitutional muster. Besides the availability of limited licenses, Minnesota has added additional procedural safeguards since *Heddan* was decided. *See* Minn.Stat. § 171.306 (2012) (establishing an ignition interlock device program).

Respondents nonetheless argue that the primacy of the seven-day temporary license has been reaffirmed, relying on *Davis,* 517 N.W.2d 901, and *Davis v. Comm'r of Pub. Safety,* 509 N.W.2d 380 (Minn.App.1993), *aff'd,* 517 N.W.2d 901 (Minn.1994). The appellants in *Davis* challenged certain changes to the implied consent law, including a required delay before a post-revocation limited license would become available. *Davis,* 509 N.W.2d at 388. In its analysis, this court merely recited that the seven-day temporary license feature of the implied consent statute remained unchanged. *Id.* This court's treatment of the temporary license

issue is far from a clear statement that a temporary license is a procedural requirement when the commissioner mails notice of revocation, nor is it a substantive analysis of the necessary duration (if any) of such a license.

■ " '[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Bendorf v. Comm'r of Pub. Safety,* 727 N.W.2d 410, 415 (Minn.2007) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). As we mentioned before, respondents here are in a decidedly different situation than a licensee facing immediate revocation. At a minimum, respondents had substantially more time to contemplate the possibility that their driving privileges are imperiled and to plan for the possibility of losing their driving privileges. This difference alone provides a sound basis for concluding that the seven days provided to licensees facing immediate revocation need not also be extended to licensees facing a revocation notice from the commissioner.

We note that our conclusion today is only that respondents are not entitled to seven days' notice of revocation. The question of how much (if any) notice that they are entitled to receive when notice of revocation is mailed to them is not before us on appeal. We may only sparingly exercise our discretion to address issues not raised by the parties, and we decline to do so here. *See State v. Glidden,* 455 N.W.2d 744, 746 (Minn.1990). We trust that either subsequent appeals or a future decision of our supreme court will sharpen the focus on this next issue.

## DECISION

The procedural due process rights of respondents were not abridged when they received six days' notice of revocation by

mail instead of seven days' notice. We reverse the district courts' rescissions of the revocations of respondents' driving privileges.

Reversed.