Charles J. BENDORF, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. A05–1484.

Supreme Court of Minnesota.

Feb. 15, 2007.

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, Eagan, MN, for appellant.

Mike Hatch, Minnesota Attorney General, Jeffrey F. Lebowski, Assistant Attorney General, Sean R. McCarthy, Assistant Attorney General, Peter D. Magnuson, Assistant Attorney General, St. Paul, MN, for respondent.

# OPINION

GILDEA, Justice.

Charles J. Bendorf appeals from a district court order sustaining the revocation of his driver's license. Bendorf argues that because his license was revoked pursuant to a statute that we declared unconstitutional in *Fedziuk v. Commissioner of Public Safety*, 696 N.W.2d 340 (Minn. 2005), he is entitled to rescission of his license revocation as a matter of procedural due process. The court of appeals affirmed the revocation of Bendorf's license. *Bendorf v. Comm'r of Pub. Safety*, 712 N.W.2d 221 (Minn.App.2006). We granted Bendorf's petition for review and now affirm.

Bendorf was arrested on March 13, 2005, for driving while impaired, in violation of Minn.Stat. § 169A.20 (2006). Bendorf was administered a chemical test to measure alcohol concentration, and he failed the test. Consequently Bendorf's driver's license was administratively revoked for 90 days, pursuant to Minn.Stat. § 169A.52, subd. 4 (2006).[1] The revocation was effective on March 20.[2] The next day, pursuant to Minn.Stat. § 169A.53 (2006), Bendorf filed a petition for judicial review of the revocation of his driver's license. The hearing on Bendorf's petition was scheduled for June 23—94 days after Bendorf petitioned for judicial review.

On March 28, 2005, Bendorf filed a motion for a temporary restraining order seeking the temporary reinstatement of his license. The district court granted Bendorf's motion and issued a written order on March 29, temporarily reinstating Bendorf's driver's license "pending the decision of the Minnesota Supreme Court in *Fedziuk*."[3] Thus, Bendorf was without driving privileges for nine days.

The judicial hearing on Bendorf's petition was held after we issued our opinion in *Fedziuk*. The question presented in *Fedziuk* was whether the 2003 amendments to Minn.Stat. § 169A.53 violated drivers' procedural due process rights. Before the 2003 amendments, the statute provided that hearings on petitions for judicial review were to be held "at the earliest practicable date, and in any event no later than 60 days" after the petition had been filed. Minn.Stat. § 169A.53, subd. 3 (2002). The 2003 amendments eliminated this language from the statute. Act of

---

1. There is no pre-revocation hearing under section 169A.52.

2. The district court found that Bendorf's license was revoked on March 26, 2005. This finding was erroneous. Under Minn.Stat. § 169A.52, subd. 7(c)(2) (2006), Bendorf received a temporary license for seven days. This license expired on March 20, and that is when the revocation became effective, as both parties have acknowledged.

3. Although the district court used the words "temporarily reinstating," the order was in effect the same as a stay of the revocation. *See* Minn.Stat. § 169A.53, subd. 2(c) (2006) (stating that a reviewing court may "order a stay of the balance of the revocation * * * if the hearing has not been conducted within 60 days after filing of the petition"). Indeed, in their briefs and at oral argument, the parties treated the temporary reinstatement as the equivalent of a stay.

May 28, 2003, ch. 2, art. 9, § 13, 2003 Minn. Laws 1st Spec. Sess. 1445, 1451.

In *Fedziuk,* we held that the 2003 amendments to section 169A.53 were unconstitutional because the statute as amended did not provide a sufficiently prompt and meaningful postrevocation review. *Fedziuk,* 696 N.W.2d at 346–48. We then revived the version of section 169A.53 that existed immediately prior to the 2003 amendments. *Fedziuk,* 696 N.W.2d at 349. This version included the requirement that hearings on petitions for judicial review be held "at the earliest practicable date, and in any event no later than 60 days" after the filing of the petition. Minn.Stat. § 169A.53, subd. 3 (2002). After our decision in *Fedziuk,* the legislature amended the statute, effective August 1, 2005, to restore the language in place before the 2003 amendments. Act of June 2, 2005, ch. 136, art. 18, § 4, 2005 Minn. Laws 901, 1158.

In support of his petition for judicial review, Bendorf argued that his license revocation "must be rescinded because the version of the implied consent law under which [his] license was revoked was found to be unconstitutional" in *Fedziuk.* The district court concluded that even though the hearing was not held within 60 days of the date Bendorf filed his petition, Bendorf suffered no prejudice because he was granted a stay of his revocation until the hearing. The court issued an order sustaining the revocation of Bendorf's license. Bendorf appealed and the court ordered the commissioner to temporarily reinstate Bendorf's license pending his appeal. The court of appeals affirmed. *Bendorf,* 712 N.W.2d at 224.

■ We are asked to address whether Bendorf was deprived of his right to procedural due process under the Fourteenth Amendment of the U.S. Constitution and Article I, Section 7 of the Minnesota Constitution.[4] This constitutional question involves the application of law to undisputed facts. Accordingly, our review is de novo. *See Minn. Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.,* 708 N.W.2d 521, 524 (Minn.2006); *Fedziuk,* 696 N.W.2d at 344.

Bendorf offers two arguments to support his claim that his license revocation must be rescinded. First, he argues that because his license was revoked under a version of section 169A.53 that we declared unconstitutional, the revocation must be rescinded. Second, he argues that even if the version of section 169A.53 revived in *Fedziuk* is construed to apply to this case, his right to due process was violated because the hearing on his petition for judicial review was held more than 60 days after he filed his petition. We address each argument in turn.

I.

■ Bendorf first argues that his license revocation must be rescinded because his license was revoked under the version of Minn.Stat. § 169A.53 that we struck down in *Fedziuk.* The commissioner responds by citing *Fedziuk's* revival of the version of the statute in effect before the 2003 amendments. *See* 696 N.W.2d at 349. But Bendorf argues that the revived statute cannot apply to his case because the revival was meant to apply only prospectively—to cases arising after *Fedziuk*—and his case was pending when *Fedziuk* was decided.

---

4. The Fourteenth Amendment provides that "[n]o state shall * * * deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The

Minnesota Constitution similarly mandates that "[n]o person shall * * * be deprived of life, liberty or property without due process of law." Minn. Const. art. I, § 7.

Under the general rule, the holding of *Fedziuk*—reviving the version of section 169A.53 that existed prior to the 2003 amendments—would apply to Bendorf's case because Bendorf's case was pending when *Fedziuk* was decided. *See Kmart Corp. v. County of Stearns*, 710 N.W.2d 761, 767 (Minn.2006) (noting that generally our decisions apply retroactively); *B.M.B. v. State Farm Fire & Cas. Co.*, 664 N.W.2d 817, 826 (Minn.2003) (same). We have recognized exceptions to this general rule in only limited circumstances. *Kmart*, 710 N.W.2d at 767–68.

■ Bendorf argues that we should make an exception for *Fedziuk* under the analysis conducted in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).[5] The *Chevron* test requires that three factors be present for a decision to be given prospective-only application. *See Kmart*, 710 N.W.2d at 768. The first factor requires that the decision establish "a new principle of law, either by overruling clear past precedent on which litigants may have relied, * * * or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Chevron*, 404 U.S. at 106–07, 92 S.Ct. 349. Even without specific reference to *Chevron*, we have ruled that our decision announcing a new rule would apply only prospectively. *See, e.g., State v. Scales*, 518 N.W.2d 587, 593 (Minn.1994) (noting that a new rule requiring that tapes be made of all custodial interrogations "will apply prospectively from the date of the filing of

this opinion"). But we made no such ruling in *Fedziuk*.

We made no such pronouncement in *Fedziuk* because we did not set forth a new principle of law or overrule prior precedent in that case. Rather, our decision in *Fedziuk* revived a law that had been substantially the same since 1982 and reaffirmed our prior cases construing that version of the statute. *Fedziuk*, 696 N.W.2d at 344–45. We noted that "*Heddan, Davis* and *Hamilton* recognize that the 1982 changes to the Implied Consent Law that permitted the prehearing revocation of drivers' licenses were firmly within [constitutional limits]." *Id.* at 349; *see also Hamilton v. Comm'r of Pub. Safety*, 600 N.W.2d 720, 724 (Minn.1999); *Davis v. Comm'r of Pub. Safety*, 517 N.W.2d 901, 905 (Minn.1994); *Heddan v. Dirkswager*, 336 N.W.2d 54, 65 (Minn.1983). And we said there was "no reason to disturb this precedent." *Fedziuk*, 696 N.W.2d at 349. Because *Fedziuk* did not establish a new principle of law or overrule prior precedent, the first factor of the *Chevron* test is not met. We need not examine whether the other two factors[6] weigh in favor of a purely prospective application of *Fedziuk* where, as in this case, the first factor is not met. *See B.M.B.*, 664 N.W.2d at 826 (examining only the first factor); *Streich v. Am. Family Mut. Ins. Co.*, 358 N.W.2d 396, 398 (Minn.1984) (same).

Because *Fedziuk* does not meet the test set forth in *Chevron*, and because we did not specifically rule in *Fedziuk* that our holding was to be given prospective-only

---

**5.** *Chevron* has been overruled, at least in part. *See, e.g., Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 752, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995) ("[Hyde] concedes that *Harper [v. Va. Dep't of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)] overruled *Chevron Oil* insofar as the case (selectively) permitted the prospective-only application of a new rule of law."). Nevertheless we have

continued to apply the *Chevron* test. *See, e.g., Kmart*, 710 N.W.2d at 768.

**6.** The other two factors examine whether retroactive application of the rule will further the rule's purpose or effect and whether retroactive application will produce "substantial inequitable results." *Chevron*, 404 U.S. at 106–07, 92 S.Ct. 349.

application, we hold that *Fedziuk* applies to Bendorf's case.

We said in *Fedziuk* that "[w]hen a statute is unconstitutional, it is not a law and it is as inoperative as if it had never been enacted." 696 N.W.2d at 349; *see also* Minn.Stat. § 645.20 (2006) ("If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid * * *."). Based on our ruling in *Fedziuk*, we conclude that Minn.Stat. § 169A.53 as it existed immediately prior to the 2003 amendments is properly applied to Bendorf and to all other similar cases that arose between August 1, 2003—the effective date of the 2003 amendments—and August 1, 2005—the effective date of the 2005 amendments that restored the language that was in place before the 2003 amendments.

## II.

■ Bendorf next argues that his right to procedural due process was violated even if the version of section 169A.53 that existed immediately prior to the 2003 amendments is applicable to his case. Bendorf cites the 60–days language in the statute and suggests that if the statute was unconstitutional without the language, then conducting a hearing more than 60 days after the filing of the petition for judicial review is a violation of due process. Because his hearing was conducted more than 60 days after his petition for judicial review was filed, Bendorf argues his license revocation must be rescinded.

Bendorf infers from *Fedziuk* that the 60–day time frame is "mandatory" under procedural due process principles and that judicial review hearings therefore always must be held within 60 days. His argument is premised on *Szczech v. Commissioner of Public Safety*, 343 N.W.2d 305 (Minn.App.1984), and he argues that we overruled *Szczech* in *Fedziuk*. In *Szczech*,

the court of appeals cited *Heller v. Wolner*, 269 N.W.2d 31 (Minn.1978), to support its holding that "[t]he statutory [60–day] time limit [of Minn.Stat. § 169A.53] is directory, not mandatory." *Szczech*, 343 N.W.2d at 308–09.

In *Fedziuk*, we distinguished the language eliminated by the 2003 amendments from the language we labeled "directory" in *Heller* "because of the due process requirement of promptness involved in [*Fedziuk*]." *Fedziuk*, 696 N.W.2d at 347 n. 9. We did not, however, discuss, much less overrule, *Szczech* or hold that the 60–day time frame in Minn.Stat. § 169A.53, subd. 3, is mandatory. Instead, we directed our attention in *Fedziuk* to a different inquiry: whether the delay caused any prejudice. *Fedziuk*, 696 N.W.2d at 347 n. 9 ("Because the drivers in *Heller* kept their licenses while they waited for their hearing, the delay in the hearing did not cause any prejudice to the drivers.").

The facts of this case likewise do not require us to review that portion of *Szczech* that held that the 60–day time frame in Minn.Stat. § 169A.53, subd. 3, is directory. This case involves a procedural due process claim whereas the mandatory-directory discussion in *Szczech* was in the context of statutory interpretation. 343 N.W.2d at 308. In a procedural due process case, the issue is not whether the statutory language is directory or mandatory. The appropriate inquiry is the one we addressed in *Fedziuk*: what level of prejudice has the driver suffered?

The prejudice inquiry is necessary because the Supreme Court has said so often "as not to require citation" that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The Supreme Court directs us to consider three factors when evaluating the

sufficiency of procedural protections: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *see also Wilkinson v. Austin*, 545 U.S. 209, 224–25, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). Application of these factors establishes that Bendorf's right to procedural due process was not violated.

There is no question that Bendorf has a private interest "in continued possession and use of the license pending the hearing," and that that interest was burdened when his license was revoked. *See Fedziuk*, 696 N.W.2d at 346. We have recognized, however, that "the duration of the revocation" and "the availability of hardship relief" are relevant to the determination of the impact on the driver's private interest. *Heddan*, 336 N.W.2d at 60. In this case, Bendorf availed himself of hardship relief by moving for a stay of his revocation. As a result, Bendorf's license was revoked for only nine days before it was temporarily reinstated.[7]

Regarding the risk of erroneous deprivation, we concluded in *Fedziuk* that, without the requirement that a judicial review hearing be held "at the earliest practicable date" and given the procedural deficiencies of the alternative administrative review, a prehearing license suspension violated due process. *Fedziuk*, 696 N.W.2d at 346–47 (citing *Barry v. Barchi*, 443 U.S. 55, 64–66, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (ruling that New York's interest in assuring the integrity of horse racing entitled the state to impose a suspension pending a prompt judicial hearing, but concluding that the statute at issue did not adequately assure a prompt hearing)). We also noted, however, that in three previous cases, we ruled that the procedural protections in the statute—the "short duration of the suspension," the "availability of limited licenses in hardship cases," and the availability of "prompt postrevocation review"—adequately guarded against the risk of erroneous deprivation, and therefore were sufficient to satisfy due process. *Fedziuk*, 696 N.W.2d at 345 (citing *Heddan*, 336 N.W.2d at 60–63; *Davis*, 517 N.W.2d at 904–05; and *Hamilton*, 600 N.W.2d at 724).[8] The revival of the statute as it existed immediately prior to the 2003 amendments provides procedural protections to guard against an erroneous deprivation of Bendorf's private interest.

Finally, with respect to the third factor in *Mathews*, we emphasize again that "drunken drivers pose a severe threat to

---

7. We express no opinion as to whether there might be a due process violation when a driver fails to move for a stay of his revocation or when a driver's motion for a stay is denied prior to the end of the 60–day period. This case also does not involve any potential prejudice that a driver could face in the event that he or she was arrested a second time for driving while impaired before the judicial review hearing and was subject to enhanced criminal penalties as a result of the first arrest and resulting license revocation.

8. In each of those cases, we concluded that the Implied Consent Law was within the constitutional boundaries set forth in *Mackey v. Montrym*, 443 U.S. 1, 19, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (considering the constitutionality of a Massachusetts statute and concluding that "the compelling interest in highway safety justifies the [state] in making a summary suspension effective pending the outcome of the prompt postsuspension hearing"). *See Fedziuk*, 696 N.W.2d at 345.

the health and safety of the citizens of Minnesota." *Heddan,* 336 N.W.2d at 63. The state has a compelling interest in highway safety justifying efforts to keep impaired drivers off the road. *Id.* Furthermore, the state has an interest in maintaining an administrable system for handling cases involving impaired drivers. Allowing courts to stay a driver's license revocation in the event that a hearing might not be able to be held within the 60–day time frame set forth in Minn.Stat. § 169A.53, subd. 3, promotes that interest.

The flexibility of the procedural due process test of *Mathews* leaves us then to weigh the impact on Bendorf's private interests against the state's interests. Bendorf was deprived of his driving privileges for only nine days, and he availed himself of relief by obtaining a stay that has allowed him to maintain his driving privileges throughout the process of judicial review.[9] This minimal impact does not outweigh the state's compelling interest in maintaining an administrable system to keep its highways free from impaired drivers. We hold that the prejudice Bendorf suffered does not rise to the level of a violation of his right to procedural due process. *See Jennings v. Mahoney,* 404 U.S. 25, 26–27, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971) (concluding that the appellant's procedural due process rights were not violated when her driver's license suspension was stayed while the court conducted a hearing at which appellant was given the opportunity to present evidence and cross-examine witnesses); *see also Barry,* 443 U.S. at 66, 99 S.Ct. 2642 (showing a con-

cern for scenarios in which individuals "would have no opportunity to put the State to its proof until they have suffered the *full penalty imposed,*" and concluding that "[o]nce suspension has been imposed," the individual's interest in a "speedy resolution to the controversy becomes paramount" (emphasis added)).

The result reached here is not meant to indicate that conducting judicial review of a license revocation more than 60 days after the filing of a petition is never a due process violation.[10] But where the stay provision in the statute has been successfully invoked to restore the driver's privileges and in the absence of a showing of prejudice beyond the short number of days at issue in this case, application of the factors set forth in *Mathews,* 424 U.S. at 335, 96 S.Ct. 893, compels the conclusion that the driver's right to procedural due process has not been violated.

Because we conclude that Bendorf's right to procedural due process was not violated in this case, we affirm.

Affirmed.

---

9. Bendorf argues that he suffered additional prejudice because he had to pay a $55 motion fee in order to obtain the stay. We have weighed this factor in our analysis and it does not change our conclusion.

10. Bendorf advanced arguments concerning the procedures being used in counties other than the one in which his case was processed

and he contends that these procedures violate the Due Process Clause and Minn.Stat. § 169A.53, subd. 3, because there is no effort made in these counties to schedule hearings on petitions for judicial review within 60 days. Because these facts are not before us, we do not address them in this case.