**Harold Andrew RIEHM, Petitioner, Appellant**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A06–2291.

Court of Appeals of Minnesota.

March 11, 2008.

David L. Ayers, Ayers & Riehm, P.A., Mendota Heights, MN, for appellant.

Lori Swanson, Attorney General, Sean R. McCarthy, Peter D. Magnuson, Jeffrey F. Lebowski, Assistant Attorneys General, St. Paul, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; MINGE, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Appellant Harold Andrew Riehm challenges the district court's order sustaining the revocation of his driver's license under the implied-consent law, alleging that Ramsey County's policy of not scheduling implied-consent hearings until after disposition of the associated criminal matter violates Minn.Stat. § 169A.53, subd. 3(a) (Supp. 2005), and appellant's procedural due-process rights.

## FACTS

The facts underlying this appeal are not disputed. Appellant was arrested on October 27, 2005, for driving while impaired, and the arresting officer invoked the implied-consent law. The officer then served him with a notice and order of revocation of his driver's license. Appellant filed a timely petition for judicial review with the district court, challenging the revocation.

District court administration sent a letter to appellant informing him that, in accordance with a Ramsey County standing order, a stay of the balance of his driver's-license revocation pending resolution of the implied-consent matter was available, and would be automatically granted upon written request.[1] The letter also stated that, under the standing order, a hearing on the implied-consent petition would not be scheduled until the criminal case was resolved, "which should be within 45 days of the first appearance." Appellant, for whatever reason, did not request a stay. His driver's license was revoked for 90 days under the implied-consent law.

Appellant's implied-consent case was subsequently scheduled for a hearing 172 days after he filed his petition for judicial review. Appellant did not challenge the revocation substantively, but instead argued that his license revocation should be rescinded because the hearing was not held within 60 days after the filing of his petition for review. The district court issued an order sustaining the revocation of appellant's driving privileges. In its conclusions of law, the district court relied on this court's decision in *Bendorf v. Comm'r of Pub. Safety*, holding that the available option of a stay of revocation remedied any harm a defendant might face in not having his implied-consent hearing within 60 days after his petition for review. 712 N.W.2d 221, 224 (Minn.App.2006), *aff'd,* 727 N.W.2d 410 (Minn.2007). The district court concluded that "[d]ue process requirements are satisfied by the remedy of a stay of the revocation and reinstatement of driving privileges pending court resolution of the implied consent petition."

---

1. The actual Ramsey County standing order is not in the record, but its content is undisputed.

## ISSUES

1. Does appellant have standing to challenge the standing order governing the scheduling of implied-consent review hearings?

2. Did the district court err in concluding that appellant's statutory rights were not violated by Ramsey County's standing order?

3. Did the district court err in concluding that appellant's constitutional right to procedural due-process was not violated by Ramsey County's standing order?

## ANALYSIS

### I.

■ We first address respondent Commissioner of Public Safety's argument that appellant lacks standing to challenge the district court's scheduling policy. Whether a party has standing to bring an action is a question of law reviewed de novo. *Nordvick v. Comm'r of Pub. Safety*, 610 N.W.2d 659, 662 (Minn.App.2000).

■ "Standing is a legal requirement that a party have a sufficient stake in a justiciable controversy to seek relief from a court." *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn.2007). Standing is acquired if an appellant has suffered some "injury-in-fact." *Id.* "An injury-in-fact is a concrete and particularized invasion of a legally protected interest." *Id.* To establish standing, appellants "must demonstrate that they will suffer a direct and personal harm resulting from the alleged denial of their constitutional rights." *See Nordvick*, 610 N.W.2d at 662–63 (holding appellants did not have standing to challenge revocation of drivers' licenses because they did not suffer a "direct and personal harm"). Appellant must show that his claimed harm is personal, actual, or imminent; traceable to respondent's

challenged actions; and likely to be remedied by this court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). In addition to "injury-in-fact," standing can be acquired if an appellant is the beneficiary of some legislative enactment granting standing. *See Lorix*, 736 N.W.2d at 624.

Here, appellant has standing to challenge the district court's policy because he asserts he suffered a "direct and personal harm" likely to be remedied by this court: his driver's license was revoked, and his implied-consent hearing was not held within 60 days after the filing of his petition for review. *See* Minn.Stat. § 169A.53, subd. 3(a) (Supp.2005) (stating that the implied-consent "hearing must be held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review. The judicial district administrator shall establish procedures to ensure efficient compliance with this subdivision"). Moreover, the statutory language just quoted confers standing on petitioners like appellant to assert that a judicial district is violating the mandates of the statute. We therefore reach the merits of appellant's challenge to Ramsey County's standing order.

### II.

■ Appellant argues that because the district court's standing order precluded his implied-consent hearing from being scheduled within 60 days after the filing of his petition for review, the standing order violates Minn.Stat. § 169A.53, subd. 3(a). The application of law to undisputed facts is a question of law, which this court reviews de novo. *Bendorf v. Comm'r of Pub. Safety*, 712 N.W.2d 221, 223 (Minn.App. 2006), *aff'd*, 727 N.W.2d 410 (Minn.2007). Statutes intended for the protection of the public are remedial in nature and are to be

liberally construed to that end. *Szczech v. Comm'r of Pub. Safety,* 343 N.W.2d 305, 306 (Minn.App.1984).

Under the implied-consent law, when an arresting officer certifies that he or she has probable cause to believe a person was driving while impaired, and that person either fails or refuses to submit to a chemical test, the commissioner or an officer acting on the commissioner's behalf will give the person notice of revocation and revoke the person's driver's license. Minn.Stat. § 169A.52, subds. 3, 4, 6, 7 (2004 & Supp.2005). Such a person may petition for judicial review of the revocation within 30 days after the receipt of the notice and order for revocation. Minn. Stat. § 169A.53, subd. 2(a) (2004). The judicial-review hearing "must be held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." *Id.,* subd. 3(a). The district court administrator "shall establish procedures to ensure efficient compliance with this subdivision." *Id.* The filing of the petition for review does not automatically stay the revocation under the statute, but the "reviewing court may order a stay of the balance of the revocation . . . if the hearing has not been conducted within 60 days after filing of the petition upon terms the court deems proper." *Id.,* subd. 2(c) (2004).

 Appellant states that the "issue in this case is whether the county has the authority to flout the explicit mandate of the implied consent statute for prompt judicial review." But "[i]t is a function of the judiciary, arising from the court's inherent judicial powers, to determine procedural matters." *State, City of Maple Grove v. Breuhl,* 615 N.W.2d 375, 377 (Minn.App.2000). "The authority to make local rules is both statutorily derived and recognized in case law as a practical necessity in performing the judicial function."

*Perkins v. State,* 559 N.W.2d 678, 686 (Minn.1997); *see also* Minn.Stat. § 480.055, subd. 1 (2004) (stating that a court has statutory authority to "adopt rules of court governing its practice," as long as those local rules do not conflict with rules promulgated by the supreme court). Thus, a district court has "considerable discretion in scheduling matters and in furthering what it has identified as the interests of judicial administration and economy." *Rice Park Props. v. Robins, Kaplan, Miller & Ciresi,* 532 N.W.2d 556, 556 (Minn.1995) (explaining that, "while Minn.Stat. § 566.08 (1994) contemplates prompt disposition of these summary proceedings, the district court has considerable discretion in scheduling matters and in furthering what it has identified as the interests of judicial administration and economy").

Although the implied-consent statute provides that a judicial-review hearing "must be held" within 60 days after a petition for review is filed, the statute also directs the district court administrator to "establish procedures to ensure efficient compliance." Minn.Stat. § 169A.53, subd. 3(a). Furthermore, if the district court is unable to schedule a hearing within 60 days, the statute allows the court to stay the balance of the revocation "upon terms the court deems proper." *Id.,* subd. 2(c). Nothing in the record in this case indicates that the district court is "flouting" the statutory timeline. As the supreme court recently noted:

> Given the substantial case load facing the district court, we understand the desire to avoid the waste of judicial and party resources in conducting duplicate proceedings, and we recognize that, because the trial of the associated criminal case may result in revocation, it could render the implied consent proceeding moot.

*State v. Wiltgen,* 737 N.W.2d 561, 567–68 (Minn.2007) (stating in dictum that district court's policy of postponing implied-consent hearings until disposition in related criminal cases would not violate due-process rights if stay was issued pending hearing). The district court acted in its discretion to "establish procedures to ensure efficient compliance."

 Appellant also asks this court to decide that "the [60–day] requirement in the statute is mandatory rather than directory."[2] But this court has already held that the implied-consent statute, which requires that hearings be held within 60 days, is directory, and not mandatory, because "no sanction or consequence is imposed [upon the district court] for failing to meet the 60–day limit." *Szczech,* 343 N.W.2d at 305–08 (applying Minn.Stat. § 169.123(6) (1982), which contains the same language as Minn.Stat. § 169A.53, subd. 3(a) (Supp.2005)). In *Szczech,* this court relied on the holding in *Heller,* in which the supreme court held that the implied-consent statute in effect in 1978 (stating that the hearing "shall" be held within 30 days) was directory. *Szczech,* 343 N.W.2d at 307–08 (citing *Heller v. Wolner,* 269 N.W.2d 31, 33 (Minn.1978)).

Appellant argues that the supreme court distinguished *Heller* in *Fedziuk v. Comm'r of Pub. Safety,* and therefore, the *Szczech* holding (that the statute is directory) was implicitly rejected. *See Fedziuk v. Comm'r of Pub. Safety,* 696 N.W.2d 340, 347 n. 9 (Minn.2005) (stating: "We believe that [the 60–day requirement] language . . . is distinguishable from the language we called 'directory' in *Heller v. Wolner* . . . because of the due process requirement of promptness involved in this case," where *Heller* appellants were not preju-

diced because their drivers' licenses were temporarily reinstated pending hearing, and where *Fedziuk* appellant was prejudiced because she lost driving privileges pending hearing). This same argument was addressed and rejected in *Bendorf,* in which the supreme court stated that *Fedziuk* did not overrule *Szczech* or hold that the 60–day timeline is mandatory. *Bendorf,* 727 N.W.2d at 415 (noting that *Szczech* was decided "in the context of statutory interpretation," whereas *Fedziuk* and *Bendorf* were procedural due-process cases decided on "level of prejudice" suffered).

In *Szczech,* as discussed above, this court decided that the 1982 version of the implied-consent statute directed, but did not mandate, district courts to hold judicial review hearings no later than 60 days after the petition for review was filed. 343 N.W.2d at 308. The 1982 version of the statute stated that a "hearing *shall* be held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." Minn. Stat. § 169.123(6) (1982) (emphasis added). The *Szczech* analysis applies here even though the current version of the implied-consent statute provides that a "hearing *must* be held" within 60 days. Minn.Stat. § 169A.53, subd. 3(a) (emphasis added). "Shall" and "must" are typically defined as "mandatory." Minn.Stat. § 645.44, subds. 15a, 16 (2004). But the *Szczech* court opted not to read the provision as mandatory because "the statute declares only a rule of construction for the aid of, but not binding on the courts." 343 N.W.2d at 307. The *Szczech* court instead relied upon "the well-established rule of statutory construction" articulated in *Wenger v. Wenger,* 200 Minn. 436, 438, 274 N.W. 517, 518 (1937),

2. "[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court." *Tereault v. Palm-* er, 413 N.W.2d 283, 286 (Minn.App.1987), *review denied* (Minn. Dec. 18, 1987).

and relied upon in *Heller*, that "statutory provisions defining the time and mode in which public officers shall discharge their duties, and which are obviously designed merely to secure order, uniformity, system and dispatch in public business are generally deemed directory." *Id.* Because the 1982 version of the statute was almost identical to the version of the statute examined in *Heller*, the *Szczech* court found that "[n]o intent to overrule *Heller* can be implied from the [1982] statutory language" and that "[t]here is no legislative intent in the [1982] statute to make the time and mode of hearing mandatory." 343 N.W.2d. at 308. This conclusion is further supported, according to *Szczech*, because neither statutory version imposed consequences on the district court for failing to meet the 60–day requirement. *Id.*; *see also Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 541 (Minn.2007) (holding that the word "shall" does not necessarily imply "that there would be specific but unexpressed consequences for noncompliance with a statute"). Rather, the statutory intent "was to secure order, uniformity, system and dispatch" by directing district courts to hold hearings quickly. *Szczech*, 343 N.W.2d at 309.

Nothing in the current implied-consent statute indicates that the intent of the legislature has changed since *Szczech* was decided. The current version does not impose sanctions for a district court's failure to hold a hearing within 60 days. *See Savre v. Indep. Sch. Dist. No. 283*, 642 N.W.2d 467, 472 (Minn.App.2002) ("[A] statute which does not declare the consequences of a failure to comply may be construed as a directory statute."); *see also Manco of Fairmont, Inc. v. Town Bd. of Rock Dell Twp.*, 583 N.W.2d 293, 295 (Minn.App.1998) (explaining that when "a statute expresses the consequences of a failure to comply with its provisions, it is

mandatory"), *review denied* (Minn. Oct. 20, 1998).

■ Under existing caselaw, the 60–day requirement in the implied-consent statute is directory. If a statutory rule is directory, generally prejudice must be shown before the failure to comply with that rule potentially warrants relief. *See State ex rel. Indep. Sch. Dist. No. 276 v. Dep't of Ed.*, 256 N.W.2d 619, 626 (Minn. 1977) ("[I]f noncompliance with a directory provision results in prejudice to an objecting party, relief may be appropriate. . . ."); *State v. Thomas*, 467 N.W.2d 324, 326–27 (Minn.App.1991) (discussing the mandatory/directory distinction and rejecting appellant's challenge of a directory statute because he failed to show prejudice). Appellant may have chosen to suffer prejudice because of the revocation of his driver's license prior to his implied-consent hearing, but because he could have received a stay of that revocation, any prejudice suffered was not caused by respondent's challenged actions. Because of the district court's broad discretion in scheduling matters, and because appellant did not suffer prejudice attributable to respondent, his argument fails. The district court did not err in sustaining the revocation of appellant's driver's license because the Ramsey County standing order does not violate the implied-consent statute, which is directory in nature, and allows courts to stay revocations, in their discretion, if implied-consent hearings are not scheduled within 60 days after the filing of the petition for review.

## III.

■ Appellant claims that his procedural due-process rights were violated because his implied-consent hearing was not scheduled until 172 days after he filed his petition for review, and only after his crim-

inal case was resolved. This constitutional question involves the application of law to undisputed facts, and we review such an application of law de novo. *Bendorf,* 727 N.W.2d at 413.

The United States and Minnesota Constitutions provide that a person's liberty will not be deprived by the government "without due process of law." U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7. A license to drive is a protected interest that cannot be deprived without procedural due process. *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971). "Due process requires a prompt and meaningful postrevocation review." *Fedziuk,* 696 N.W.2d at 346. The proper inquiry is whether appellant was prejudiced by the delayed judicial-review hearing. *Bendorf,* 727 N.W.2d at 415. "The prejudice inquiry is necessary because the [United States] Supreme Court has said so often ... that due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* (citing *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)) (quotation marks omitted). An appellant cannot assert a procedural due-process claim without first establishing that he has suffered a "direct and personal harm" resulting from the alleged denial of his constitutional rights. *Davis v. Comm'r of Pub. Safety,* 509 N.W.2d 380, 391 (Minn.App.1993), *aff'd,* 517 N.W.2d 901 (Minn.1994).

The remedy for a district court not providing an implied-consent hearing within 60 days after the petition for review is not a rescission of the revocation, but rather a stay of revocation. *Bendorf,* 712

N.W.2d at 224 (holding that appellant's rights to procedural due-process were not violated when he requested the remedy of a stay of revocation); *see also Szczech,* 343 N.W.2d at 308 ("Due process does not require a hearing within 60 days."). Appellant chose not to obtain a stay of his revocation, and therefore failed to request the remedy available to him.

After the parties submitted their briefs in this matter, the supreme court issued its decision in *Wiltgen.* 737 N.W.2d 561. Although the issue in *Wiltgen* was whether the state could charge a defendant using a previous, unreviewed license revocation as an aggravating factor, the court also commented on Hennepin County's standing order, which is essentially the same as Ramsey County's standing order, stating:

> [T]he district court's Standing Order would, by itself, violate due process in situations where it has the effect of eliminating the requirement of a prompt postrevocation review....
>
> ... The Standing Order would not violate due process with respect to the driving privilege if the district court stayed the balance of the revocation period and reinstated the driving privilege.

*Id.* at 569. Therefore, the supreme court has considered the propriety of such a standing order as a whole within the procedural due-process framework, and after applying the *Mathews v. Eldridge* test, found that it does not deprive a driver of due process as long as the balance of the driver's license revocation is capable of being stayed pending the implied-consent hearing.[3] Although the above language is

---

**3.** The *Mathews* test directs courts to consider three factors when evaluating the sufficiency of procedural due-process protections, and has been used to evaluate whether license-

revocation procedures comply with due process in Minnesota:

(1) the private interest that will be affected by the official action, (2) the risk of an erroneous deprivation of such interest

admittedly dictum, and not binding on this court, it is given considerable weight because it expresses the opinion of the supreme court. *In re Estate of Bush*, 302 Minn. 188, 207, 224 N.W.2d 489, 501 (1974) (stating supreme court dictum given considerable weight when it expresses the court's opinion); *Pecinovsky v. AMCO Ins. Co.*, 613 N.W.2d 804, 808 (Minn.App.2000) (holding dictum not binding), *review denied* (Minn. Sept. 26, 2000); *see also Simons v. Shiltz*, 741 N.W.2d 907, 910 (Minn. App.2007) (relying on dictum in supreme court decision to reach holding). We find the supreme court's application of the *Mathews* test in *Wiltgen* to a similar standing order to be sound and agree with the conclusion.

Here, the availability of a stay of revocation before appellant's implied-consent hearing minimized any prejudice associated with a delayed hearing.[4] Because appellant could have avoided suffering a "direct and personal harm" by availing himself of the remedial stay offered to him, the district court did not err in determining that appellant was not denied procedural due-process rights when his implied-consent hearing was not held within 60 days after the filing of his petition for judicial review.

## DECISION

Because Minn.Stat. § 169A.53, subd. 3(a) (Supp.2005), is directory, the district court did not err in concluding that appellant's statutory rights were not violated by Ramsey County's standing order, which caused appellant's implied-consent hearing not to be scheduled within 60 days after the filing of his petition for judicial review. Because appellant did not avail himself of a stay of the revocation of his driving privileges, the district court did not err in concluding that appellant's procedural due-process rights were not violated by Ramsey County's standing order.

**Affirmed.**

---

through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Wiltgen*, 737 N.W.2d at 568 (quotation marks omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).

4. Noting that it need not resolve its concern to decide the case, the *Wiltgen* court said that it "[has] some concern that the authority of the [Hennepin County] Standing Order to stay the balance of the revocation period is unclear under Minn.Stat. § 169A.53, subd. 2(c), because that provision does not explicitly authorize a stay before the 60–day period for an implied consent hearing has expired." *Wiltgen*, 737 N.W.2d at 571 n. 6. However, since neither appellant nor respondent has raised that issue in this case, we need not address it.