**Daniel Joseph REEVES, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A07–1237.

Court of Appeals of Minnesota.

June 24, 2008.

Peter J. Timmons, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Peter D. Magnuson, Matthew Frank, Joan M. Eichhorst, Assistant Attorneys General, St. Paul, MN, for respondent.

Considered and decided by
STONEBURNER, Presiding Judge;
LANSING, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Appellant Daniel Joseph Reeves challenges the district court order sustaining the revocation of his driving privileges, arguing that (1) since he did not fail the preliminary breath test (PBT), there was no probable cause for his arrest for driving while impaired (DWI) and (2) Hennepin County's "Fast–Track" program, which dictates the scheduling of implied-consent hearings, violates Minn.Stat. § 169A.53, subd. 3(a) (2006) and his due-process rights. We affirm.

## FACTS

Reeves was stopped on September 16, 2006, by an officer who observed his vehicle change lanes without signaling, weave within its lane, and touch the right-lane divider several times, all within a one-mile distance. Following the stop, the officer "noticed that [Reeves] had bloodshot and watery eyes and that there was an odor of an alcoholic beverage coming from the vehicle." Reeves admitted that he had been drinking. The officer ordered Reeves out of the vehicle and observed that Reeves "was swaying a little bit" as he exited.

While conducting the horizontal gaze nystagmus (HGN) field sobriety test, the officer noticed that Reeves smelled of alcohol. The officer "noted four clues," two in each eye, and testified that Reeves thus failed the HGN test.

Although Reeves swayed, put his foot down, and used his arms for balance while performing the "one-legged stand" field sobriety test, the officer considered

Reeves's performance of this test to be satisfactory.

Next, the officer administered a PBT. After an unsuccessful attempt, the officer was able to obtain a reading of .067. A second reading of .077 was obtained from a slightly larger breath sample.

Reeves was then arrested for DWI and he submitted to a blood test administered pursuant to the implied-consent law, which he failed. On November 1, 2006, Reeves's driver's license was revoked. Reeves petitioned for judicial review on November 9, and his implied-consent hearing was scheduled to occur 130 days later, March 19, 2007. On November 13, 2006, Reeves sought and was granted a stay of revocation; his driving privileges were reinstated the next day, and all references to the implied-consent revocation were removed from his driving record pending the hearing.

At the implied-consent hearing, Reeves challenged the revocation, arguing that (1) there was no probable cause for his arrest and (2) Hennepin County's "Fast–Track" program, which dictates the scheduling of implied-consent hearings, violated Minn. Stat. § 169A.53, subd. 3(a) (2006), and his due-process rights. The district court rejected both arguments, and this appeal follows.

## ISSUES

1. Did the officer have probable cause to arrest Reeves for DWI?

2. Did Hennepin County's "Fast–Track" program violate Reeves's statutory or constitutional rights?

## ANALYSIS

### I.

 Reeves argues that the district court erred in finding that there was prob-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by

appointment pursuant to Minn. Const. art. VI, § 10.

able cause to arrest him for DWI because he twice "passed" a preliminary breath screening test (PBT), with readings of .067 and .077. We disagree.

■ "[T]he duty of the reviewing court is simply to ensure that the officer had a substantial basis for concluding that probable cause [for arrest for DWI] existed at the time of invoking the implied consent law." *State v. Olson*, 342 N.W.2d 638, 641 (Minn.App.1984) (citation omitted).

■ When a PBT is warranted, the results "must be used for the purpose of deciding whether an arrest should be made." Minn.Stat. § 169A.41, subd. 2 (2006). But driving while "under the influence of alcohol" *or* driving with an alcohol concentration of .08 or more are two of seven independent grounds for committing the crime of DWI. Minn.Stat. § 169A.20, subd. 1(1), (5) (2006). An officer may lawfully arrest a person for DWI when there is probable cause to believe that a violation has occurred. *Overline v. State*, 406 N.W.2d 23, 25–26 (Minn.App.1987). Probable cause to arrest a person for DWI exists when the facts and circumstances available at the time of arrest reasonably warrant a prudent and cautious officer to believe that an individual was driving while under the influence. *Olson*, 342 N.W.2d at 640. While the determination is based on the totality of the circumstances, there is no "mechanical or numerical equation." *State v. Driscoll*, 427 N.W.2d 263, 265 (Minn.App.1988) (quotation omitted). In addition, reviewing courts should pay great deference to an officer's determination of probable cause. *Olson*, 342 N.W.2d at 640–41.

In this case, the officer relied on his objective observations and his experience as a patrol officer in arresting Reeves for DWI. The officer observed seven indicia of intoxication prior to effecting the arrest: (1) erratic driving; (2) bloodshot/watery eyes; (3) odor of alcohol; (4) admission of drinking; (5) swaying; (6) failing four of six "clues" during the HGN field sobriety test; and (7) some difficulty completing the "one-legged stand" field sobriety test. Despite the PBT results, the officer had a substantial basis for determining he had probable cause to make this DWI arrest because the totality of the circumstances indicated that Reeves was driving while under the influence of alcohol.

■ Moreover, it is not inconsistent for a DWI arrest and invocation of the implied-consent law to be based on driving while under the influence of alcohol even though the driver's blood-alcohol concentration is within the legal limit. The implied-consent law is triggered

when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired), and . . .

(1) the person has been lawfully placed under arrest for violation of section 169A.20 . . . *or* (4) the screening test was administered and indicated an alcohol concentration of 0.08 or more.

Minn.Stat. § 169A.51, subd. 1(b) (2006) (emphasis added). A PBT reading less than .08 does not negate the other bases of probable cause supporting arrest for DWI and invocation of the implied-consent law. *See State v. Shepard*, 481 N.W.2d 560, 562 (Minn.1992) ("The state may obtain a[DWI] conviction even if the driver's blood alcohol concentration was less than [the legal limit] provided the state shows that the driver had drunk enough alcohol so that the driver's ability or capacity to drive was impaired in some way or to some degree."). Although in this case the PBT results were less than the legal limit, independent probable cause to arrest Reeves for DWI nonetheless remained. Thus, in-

vocation of the implied-consent law was justified.

The district court did not err in concluding that the officer had probable cause to arrest Reeves for DWI, because the totality of the circumstances indicated that Reeves was driving while under the influence of alcohol in violation of section 169A.20, subd. 1(1).

## II.

■ Reeves next contends that his driver's-license revocation must be rescinded because Hennepin County's Fast–Track program violates Minn.Stat. § 169A.53, subd. 3(a) (2006), as well as his right to due process. We disagree. In *Riehm v. Comm'r of Pub. Safety*, this court recently rejected identical challenges to Ramsey County's similar scheduling policy. 745 N.W.2d 869 (Minn.App.2008), *review denied* (Minn. May 20, 2008).

As an initial matter, respondent Commissioner argues that Reeves lacks standing to challenge the program. But an identical argument was addressed and disposed of in *Riehm:*

> [A]ppellant has standing to challenge the district court's [standing order] policy because he asserts he suffered a "direct and personal harm" likely to be remedied by this court: his driver's license was revoked, and his implied-consent hearing was not held within 60 days after the filing of his petition for review.

745 N.W.2d at 873. Reeves, who asserts he suffered the same harm, thus has standing here.

■ Turning to the merits, the application of law to undisputed facts is reviewed de novo. *Bendorf v. Comm'r of Pub. Safety*, 727 N.W.2d 410, 413 (Minn.

2007). Reeves argues that section 169A.53, subd. 3(a) was violated because his hearing was scheduled to be held 130 days after the petition was filed. The implied-consent hearing "must be held at the earliest practicable date, and in any event no later than 60 days following the filing of the petition for review." Minn. Stat. § 169A.53, subd. 3(a). But "a district court has considerable discretion in scheduling matters." *Riehm,* 745 N.W.2d at 874 (quotation omitted). Moreover, "the implied-consent statute, which requires that hearings be held within 60 days, is directory, and not mandatory." *Id.* at 875. And, when a statutory rule is directory, a petitioner is not entitled to relief unless the lack-of-compliance caused him prejudice. *Id.* at 876.

Reeves's claim of prejudice hinges on the seven days he was without his driving privileges before he was granted a stay pending the implied-consent hearing.[1] "But where the stay provision in the statute has been successfully invoked to restore the driver's privileges and in the absence of a showing of prejudice beyond the short number of days [nine] at issue in this case ... the driver's right to procedural due process has not been violated." *Bendorf,* 727 N.W.2d at 417. Thus, Reeves's claim of prejudice fails because he was without his driving privileges for an even shorter period of time than was Bendorf.

The district court correctly rejected Reeves's challenges to the Fast–Track program.

## DECISION

We affirm the district court order sustaining Reeves's driver's-license revocation

---

1. The district court found that "[t]he parties do not dispute that [Reeves] was without his driving privileges for seven days." The record is unclear as to how this calculation was made. In any event, Reeves has not disputed the district courts calculation on appeal.

because (1) the officer had probable cause to arrest Reeves for DWI, despite PBT readings less than .08, when the totality of the circumstances indicated that Reeves was driving while under the influence in violation of Minn.Stat. § 169A.20, subd. 1(1) (2006), and (2) Reeves's loss of his driving privileges for seven days did not demonstrate that he was unjustly prejudiced by the Fast–Track program.

**Affirmed.**