*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0852**

Nicholas Gene Alleman, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed March 4, 2024
Affirmed
Smith, Tracy M., Judge**

Crow Wing County District Court
File No. 18-CV-22-3333

Richard Dahl, Dahl Law Firm PA, Brainerd, Minnesota (for appellant)

Keith Ellison, Attorney General, Ryan Pesch, Matthew McGuire, Assistant Attorneys General, St. Paul, Minnesota (for respondent)

Considered and decided by Wheelock, Presiding Judge; Smith, Tracy M., Judge; and Gaïtas, Judge.

**NONPRECEDENTIAL OPINION**

**SMITH, TRACY M.**, Judge

In this appeal from the district court's order denying appellant Nicholas Gene Alleman's petition to rescind the revocation of his driver's license and impoundment of his license plate, Alleman argues that the district court erred by concluding that the officer had (1) reasonable suspicion to stop his motorcycle, (2) probable cause to arrest him for driving

while impaired (DWI), and (3) probable cause for the search warrant to obtain a sample of his blood or urine. We affirm.

**FACTS**

Respondent commissioner of public safety revoked Alleman's driver's license and impounded his license plate after he was arrested for DWI and refused to submit to a blood or urine test. Alleman sought judicial review of the commissioner's decision. At the implied-consent hearing, the district court received testimony from Officer Peter Lindman and various exhibits, including Officer Lindman's squad-car video, screenshots from that squad-car video, and the search warrant. The evidence yielded the following facts.

On August 2, 2022, around 10:00 p.m., Officer Lindman observed a motorcycle approach an intersection "at a fast rate of speed" and then "stop[] rapidly[,] causing [the] tires to squeal." Because he believed that the driver was driving carelessly or recklessly, Officer Lindman followed the motorcycle and noticed that its license plate was obstructed by a backpack. He pulled over the motorcycle as it was driving into a gas station.

Officer Lindman identified the driver as Alleman. When Officer Lindman asked Alleman where he was going, Alleman replied that he was going to a friend's house whose address was in the opposite direction of his travel. Alleman then "change[d] that story" and said that he was in a hurry to get home to his girlfriend. Officer Lindman observed that Alleman was "restless" and "fidgety" and described Alleman's behavior as including "rapid speech," "finger twitches," and "teeth grinding."

Suspecting that Alleman was under the influence of a controlled substance, Officer Lindman administered field sobriety tests. First, Officer Lindman instructed Alleman to

2

perform the modified Romberg test, which required Alleman to estimate the passage of 30 seconds. An estimate that is within five seconds of the actual 30-second mark is considered "normal." Alleman estimated the passage of 30 seconds at the 25-second mark, which Officer Lindman testified was on "[t]he fast side of normal."

According to Officer Lindman, Alleman then started to "pass[] out." While resting on his motorcycle, Alleman began passing out a second time, and Officer Lindman called for an ambulance. Alleman informed Officer Lindman that he might be hypoglycemic; but when the ambulance arrived, Alleman refused to allow the ambulance personnel to check his blood-sugar level. He also refused treatment or transport.

Officer Lindman then resumed field sobriety testing. He had Alleman perform the walk-and-turn test, during which he observed three "clues" of impairment—Alleman "was unable to maintain the starting position, stepped off line, and raised his arms." Officer Lindman also asked Alleman if he would perform the one-legged-stand test. Alleman stated that he was unable to perform that test because of an old knee injury, but Officer Lindman did not observe any signs of a knee impairment.

Officer Lindman administered a preliminary breath test, which showed an alcohol concentration of zero. Officer Lindman then requested that Alleman take an "oral drug test," but Alleman refused. Believing that Alleman refused to take an oral drug test because he was under the influence of a controlled substance, Officer Lindman arrested Alleman for DWI. Officer Lindman applied for and obtained a search warrant for a sample of Alleman's blood or urine. Officer Lindman advised Alleman that "refusing to comply with the warrant is a crime." Alleman refused to submit to a blood or urine test.

3

Based on these facts, the district court sustained the license revocation and license-plate impoundment. Alleman appeals.

## DECISION

Under the implied-consent law, Minnesota Statutes sections 169A.50 to 169A.53 (2022), a person consents to a blood or urine test to determine the presence of a controlled substance when an officer has probable cause to believe that the person was driving while impaired and the person has been lawfully arrested for that offense. Minn. Stat. § 169A.51, subd. 1(a), (b)(1). "[A] blood or urine test may be conducted only pursuant to a search warrant . . . or a judicially recognized exception to the search warrant requirement." *Id.*, subd. 3(a). If the officer certifies that there was probable cause to believe that the person had been driving while impaired and that the person refused to submit to a blood or urine test, then the commissioner must revoke the person's driver's license. Minn. Stat. § 169A.52, subd. 3(a); *see also* Minn. Stat. § 171.177, subd. 4(a) (2022) (requiring license revocation for refusal of blood or urine test directed by search warrant). The commissioner must also impound the person's license plate based on the person's license revocation for test refusal. Minn. Stat. § 169A.60, subds. 1(d)(1), 2(a)(1) (2022). The person may petition for judicial review of his license revocation and license-plate impoundment. Minn. Stat. §§ 169A.53, subd. 2 (license revocation), 171.177, subd. 11 (same), 169A.60, subd. 10 (license-plate impoundment) (2022).

The commissioner has the burden of proof in implied-consent proceedings, and the standard of proof is a preponderance of the evidence. *Johnson v. Comm'r of Pub. Safety*, 392 N.W.2d 359, 362 (Minn. App. 1986). We review de novo questions of law in an

4

implied-consent proceeding. *See Harrison v. Comm'r of Pub. Safety*, 781 N.W.2d 918, 920 (Minn. App. 2010). A district court's findings of fact are reviewed under the clearly erroneous standard. *In re Source Code Evidentiary Hearings*, 816 N.W.2d 525, 537 (Minn. 2012). "We hold findings of fact as clearly erroneous only when we are left with a definite and firm conviction that a mistake has been committed." *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002) (quotation omitted).

I. **The district court did not err by concluding that Officer Lindman had reasonable suspicion to stop Alleman's motorcycle.**

Alleman first argues that Officer Lindman lacked the necessary reasonable, articulable suspicion of criminal activity to stop his motorcycle and that the evidence that followed should have been suppressed. The United States and Minnesota Constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "But an officer does not violate the prohibition if [the officer] stops a vehicle to conduct an investigation based on the officer's reasonable suspicion that the driver is engaging in criminal activity." *Soucie v. Comm'r of Pub. Safety*, 957 N.W.2d 461, 463-64 (Minn. App. 2021), *rev. denied* (Minn. June 29, 2021). Reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see Magnuson v. Comm'r of Pub. Safety*, 703 N.W.2d 557, 559 (Minn. App. 2005). "Generally, if an officer observes a violation of a traffic law, no matter how insignificant the traffic law, that observation forms the requisite particularized and objective basis for conducting a traffic stop." *State v. Anderson*, 683 N.W.2d 818, 823 (Minn. 2004).

The district court explained that Officer Lindman stated two grounds for stopping Alleman's motorcycle: (1) Alleman was potentially driving carelessly or recklessly and (2) the motorcycle's license plate was obstructed by a backpack. We need not consider the first ground because, as we explain below, the second ground was a valid basis for the stop and is supported by the evidence.

Under Minnesota Statutes section 169.79, subdivision 7 (2022), "[t]he person driving the motor vehicle shall keep the [license] plate legible and unobstructed . . . so that the lettering is plainly visible at all times." *See* Minn. Stat. § 169.011, subd. 44 (2022) (defining "motorcycle" as a "motor vehicle"). Based on the squad-car video, the district court found that it was "very clear that the backpack obstruct[ed] at least three quarters of the license plate." Alleman disputes the district court's finding that his license plate was obstructed by the backpack.

Alleman contends that two screenshots from the squad-car video show that his license plate was not covered by the backpack before Officer Lindman stopped his motorcycle. But a review of the squad-car video plainly shows that the license plate was partially obstructed by the backpack before Officer Lindman stopped Alleman's motorcycle. Because the record supports the district court's finding that Alleman's license plate was obstructed by the backpack, the district court did not err by concluding that Officer Lindman had reasonable suspicion to stop Alleman's motorcycle.

**II.     The district court did not err by concluding that Officer Lindman had probable cause to arrest Alleman for DWI.**

Alleman next argues that Officer Lindman lacked probable cause to arrest him for DWI. To arrest a person for DWI, an officer must have probable cause to believe that the person is under the influence of alcohol, a controlled substance, or another intoxicating substance. Minn. Stat. § 169A.20, subd. 1 (2022); *see also* Minn. Stat. § 169A.52, subd. 3(a) (requiring probable cause to believe that a person has violated Minn. Stat. § 169A.20 (2022) to revoke that person's driver's license). "Probable cause to arrest a person for DWI exists when the facts and circumstances available at the time of arrest reasonably warrant a prudent and cautious officer to believe that an individual was driving while under the influence." *Reeves v. Comm'r of Pub. Safety*, 751 N.W.2d 117, 120 (Minn. App. 2008).

"Whether the arresting officer's actions were reasonable is an objective inquiry," and "[t]he existence of probable cause depends on the facts of each individual case." *State v. Moorman*, 505 N.W.2d 593, 598-99 (Minn. 1993). An officer needs only one objective indication of intoxication to constitute probable cause to believe that a person is under the influence. *Holtz v. Comm'r of Pub. Safety*, 340 N.W.2d 363, 365 (Minn. App. 1983). "To establish probable cause, facts need not exclude all innocent explanations for conduct nor conclusively show that conduct was illegal." *State v. Hawkins*, 622 N.W.2d 576, 577 (Minn. App. 2001).

The district court concluded that the following facts and circumstances demonstrated multiple indicia of intoxication: (1) Alleman provided multiple and

inconsistent answers to Officer Lindman's question about where he was going; (2) Officer Lindman observed that Alleman was restless and fidgety; (3) Alleman exhibited rapid speech, finger twitches, and teeth grinding; (4) Alleman started to pass out twice during the traffic stop; and (5) Alleman failed the walk-and-turn test. In addition, it is undisputed that Alleman refused to perform the one-legged-stand test or to take an oral drug test.

Alleman contends that there were innocent explanations for any indication of impairment and offers alternative explanations for his conduct. He asserts that he was traveling in the opposite direction of his friend's house because he was confused about his location; he was grinding his teeth because he was chewing tobacco, although he acknowledges that Officer Lindman did not notice that he was chewing tobacco; his activities earlier in the day, the hot weather, and the fact that he was standing next to a hot air-cooled motorcycle for 15 minutes could have caused him to pass out; and he refused to perform the one-legged-stand test because of an alleged knee injury. None of these alternative explanations for Alleman's conduct negate Officer Lindman's observations of objective indicia of intoxication.

Alleman also points out that his performance was "normal" on the Romberg test and that his preliminary breath test showed an alcohol concentration of zero. However, performing well on some field sobriety tests does not negate probable cause when there are other indicia of intoxication. *See State v. Prax*, 686 N.W.2d 45, 49 (Minn. App. 2004), *rev. denied* (Minn. Dec. 14, 2004). In addition, Alleman does not dispute that Officer Lindman arrested him for driving under the influence of a controlled substance, not alcohol.

8

Therefore, the district court did not err by concluding that Officer Lindman had probable cause to arrest Alleman for DWI.

## III. The district court did not err by concluding that there was probable cause for the search warrant.

Finally, Alleman argues that the search warrant to obtain a sample of his blood or urine was not supported by probable cause because it relied on his Romberg test result. "A warrant is supported by probable cause if, on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Holland*, 865 N.W.2d 666, 673 (Minn. 2015) (quotation omitted). There is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

But "a search warrant is void, and the fruits of the search must be excluded, if the application includes intentional or reckless misrepresentations of fact material to the findings of probable cause." *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010) (quotation omitted). When a defendant seeks to invalidate a warrant on that basis, "the two-prong *Franks* test requires a defendant to show that (1) the affiant deliberately made a statement that was false or in reckless disregard of the truth, and (2) the statement was material to the probable cause determination." *Id.* (quotations omitted).

Alleman contends that Officer Lindman's inclusion of his Romberg test result in the warrant application without explaining that the result was normal was a misrepresentation. The search warrant application stated: "Officer Lindman conducted the Modified Romberg test. Alleman estimated 30 seconds in approximately 25 seconds." Alleman does not

challenge the truthfulness of this statement. But he argues that Officer Lindman's inclusion of the statement in the warrant application, without context, represented that he "failed the Romberg test."

Even if the statement in the warrant application about Alleman's Romberg test result could be considered a misrepresentation, the statement is not material. "A misrepresentation or omission is material if, when the misrepresentation is set aside or the omission supplied, probable cause to issue the search warrant no longer exists." *Andersen*, 784 N.W.2d at 327. Even if the warrant application had excluded the statement about the Romberg test result or had included the context that the result fell within the range of normal, the warrant was still supported by probable cause because the application included the remaining indicia of intoxication—Alleman's fidgeting, rapid speech, twitches, fainting, inconsistent responses to questions, poor performance on the walk-and-turn test, and refusal to perform other tests.

Because the alleged misrepresentation in the warrant application was not material, the district court did not err by concluding that there was probable cause for the search warrant.

**Affirmed.**

10